SILVER CREEK DRAIN DISTRICT v EXTRUSIONS DIVISION, INC

Docket Nos. 216182, 216644. Submitted June 15, 2000, at Grand Rapids. Decided May 4, 2001, at 9:00 A.M. Leave to appeal sought.

Extrusions Division, Inc., the owner of a parcel of unimproved real property known as Old South Field, brought an action in the Kent Circuit Court against the city of Grand Rapids and the Kent County Drain Commissioner, alleging inverse condemnation after the city refused to issue a building permit for the construction of a warehouse on Old South Field in conjunction with the expansion of Extrusions' North Complex operations on a parcel adjoining Old South Field, and after the drain commissioner failed to pursue a purchase of Old South Field, which had been determined to be an ideal location for the construction of a storm water detention pond to alleviate flooding in the area.

The Silver Creek Drain District, after determining that Old South Field was worth $211,300 and depositing that amount in escrow, brought an action in the Kent Circuit Court against Extrusions, seeking the condemnation of Old South Field. In its complaint, the district reserved the right to bring a federal court or state court action to recover the cost of remediating contamination on Old South Field. The actions were consolidated. After a bench trial, the court, Donald A. Johnston, J., condemned Old South Field and awarded Extrusions $41,032. The award represented the difference between the value of Old South Field without regard to remediation costs ($278,800) and the estimated cost of remediation ($237,768). The court determined the value of Old South Field without regard to remediation costs by averaging the appraisals offered by Extrusions' expert ($346,300) and by the district ($211,300). Extrusions appealed by leave granted.

The Court of Appeals *held*:

1. Environmental contamination on property that is the subject of an action under the Uniform Condemnation Procedures Act (UCPA), MCL 218.51 *et seq.*, and the cleanup costs associated with the contamination may not be considered when determining just compensation for the property. The UCPA does not provide a basis for recovering remediation costs. A condemning agency must bring a separate cause of action under state or federal law to establish liability for remediation costs. The UCPA only provides the proce-

dures by which a condemning agency may reserve its right to a cost recovery action (subsection 5[1], MCL 213.55[1], as amended by 1993 PA 308) and procedures by which a trial court may withhold escrow funds pending the resolution of an action for recovery of remediation costs (subsection 8[1], MCL 213.58[1], as amended by 1993 PA 308).

2. The trial court did not clearly err in finding that Old South Field was worth $278,800 without regard to contamination. The figure is the average of the valuations presented by Extrusions and the district, and it falls between the actual cash value of the property in 1993 and Extrusions' calculation of the 1994 cash value.

3. Extrusions did not contest the trial court's findings that the taking of Old South Field had no effect on the value of the North Complex. The trial court did not err in not awarding damages for the claimed decline in the value of the North Complex.

Reversed and remanded for further proceedings.

EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT — REMEDIATION COSTS.

The Uniform Condemnation Procedures Act does not authorize a reduction in just compensation for condemned property for contamination and remediation costs; the condemning agency must bring a separate action under state or federal law if it seeks to recover remediation costs from the condemnee (MCL 213.55[1], 213.58[1], as amended by 1993 PA 308).

*Warner Norcross & Judd LLP* (by *Douglas A. Dozeman* and *Christian E. Meyer*), for Extrusions Division, Inc.

*Varnum, Riddering, Schmidt & Howlett LLP* (by *Paul J. Greenwald* and *Matthew Zimmerman*), for Silver Creek Drain District and Kent County Drain Commissioner.

Before: SMOLENSKI, P.J., and ZAHRA and COLLINS, JJ.

ZAHRA, J. In these consolidated cases, appellant Extrusions Division, Inc. (Extrusions), appeals by leave granted, challenging the trial court's finding of just compensation for a parcel of real property subject to a taking by Silver Creek Drain District (the

drain district). We reverse and remand for further proceedings consistent with this opinion.

## I. FACTS

The land at issue is located in Grand Rapids and is referred to by the parties as "Old South Field." Extrusions purchased Old South Field in 1982, intending to use it for future expansion of its North Complex, which is adjacent to Old South Field.[1] Extrusions built a fence around Old South Field following its purchase, but otherwise left the property vacant and unimproved. In 1990, the drain district began evaluating options for alleviating flooding in the area. Through a series of public meetings it was disclosed that Old South Field was an excellent location for construction of a storm water detention pond.

In January 1992, Extrusions applied for a permit from the city of Grand Rapids to construct a warehouse on Old South Field. The city refused to grant the permit. On October 2, 1992, Extrusions filed an inverse condemnation action against the city and the Kent County Drain Commissioner. Extrusions claimed the city's refusal to grant the building permit, and the failure of the drain commissioner to "pursue a purchase" of Old South Field, constituted an unconstitutional taking of private property without just compensation.

On March 7, 1994, the drain district provided Extrusions a "just compensation" offer for Old South Field in the amount of $211,300. The drain district stated within its offer that it reserved its right to bring a fed-

---

[1] Extrusions' owner, James Azzar, also operates Azzar Store Equipment from the North Complex site. Azzar Store Equipment was dismissed from the suit below and is not a party to this appeal.

eral or state cost recovery action regarding the release of hazardous substances on the property. The parties stipulated below that "some alleged hazardous substances were disposed of or placed on the Old South Field" by the party that owned the property before Extrusions. On May 26, 1994, the drain district executed a "Declaration of Taking," declaring that Old South Field was being taken to effect a necessary public improvement. The declaration of taking was recorded with the Kent County Register of Deeds on June 6, 1994. On June 21, 1994, the county treasurer executed an affidavit attesting to the deposit of $211,300, the amount estimated as just compensation for Old South Field. On June 29, 1994, the drain district filed its condemnation action.[2] In its complaint, the drain district again reserved its right to bring a federal or state cost recovery action regarding the release of hazardous substances on the property.

On February 20, 1995, pursuant to stipulation of the parties, the trial court ordered Old South Field conveyed to the drain district and ordered the drain district to pay Extrusions $211,300 for the taking. Despite the February 20 stipulation, on April 21, 1995, the drain district brought a motion requesting that the funds remain in escrow as security for remediation costs associated with environmental contamination of Old South Field. The drain district estimated the total environmental remediation cost to be $467,100. Extrusions argued for release of the escrow funds, claiming it was not liable for remediation costs of any environ-

---

[2] On May 10, 1995, the Kent Circuit Court consolidated Extrusions' inverse condemnation action and the drain district's condemnation action.

mental contamination on the property.[3] On November 3, 1995, pursuant to stipulation of the parties, the trial court ordered the drain district to remove from escrow and pay Extrusions the $211,300 offered as just compensation together with interest from the date of conveyance.[4] The drain district complied with that order and paid those sums.[5]

A bench trial commenced almost two years later on the issue of valuation of Old South Field. On November 6, 1997, the trial court issued an opinion, finding that the value of Old South Field at the time of the taking, without consideration of environmental cleanup costs, was $278,800. The court then found:

---

[3] Extrusions cited the newly amended Natural Resources and Environmental Protection Act (NREPA), MCL 324.20102 and 324.20126, in claiming it was not liable.

[4] In its brief on appeal, the drain district explains that it viewed the amendments of the NREPA as allowing only cause-based liability for environmental contamination and, "not wanting to incur the cost of trying to meet [the burden of proving that Extrusions caused the environmental contamination on the property], entered into a stipulation and order releasing the escrow."

[5] In it reply brief on appeal, Extrusions argues the drain district waived its right to pursue any cost recovery action against Extrusions and, therefore, should not be allowed to recover, by way of a just compensation trial, what it refused to pursue through the procedures established by the Uniform Condemnation Procedures Act, MCL 213.51 et seq. Extrusions notes that, in addition to stipulating the release of the escrow funds, the drain district's counsel made clear below that the drain district did not intend to pursue a remediation claim against Extrusions. The drain district's counsel stated during a motion hearing "we will never sue them for cleanup costs."

As will be discussed in detail, our holding that the trial court erred in determining the amount of just compensation for the taking of Old South Field is based on the plain language of the Uniform Condemnation Procedures Act. Whether the drain district waived its right to bring separate cost recovery actions is not dispositive of this case. That issue would arise if and when the drain district brings such an action. We make no determination with respect to whether the drain district, in fact, waived any future cost recovery action.

> At the time of the taking, Old South Field was an environ-
> mentally contaminated site, with respect to which a reason-
> ably prudent purchaser would have required, at a minimum,
> a formal Type-C Closure from the DNR as a condition prece-
> dent to closing.

The court determined that the reasonable cost of securing such a formal Type-C clearance was $237,768. Subtracting that amount from the value of the property without consideration of environmental cleanup costs, the court arrived at the sum of $41,032, which it concluded was the net fair market value of the property and constituted just compensation on the date of the taking. On January 6, 1998, the court issued a final order, stating Extrusions is "entitled to keep all amounts previously paid to it [by the drain district]" and dismissing all other claims.[6]

On appeal, Extrusions presents three arguments to support the conclusion the trial court erred in determining the amount of just compensation for the taking of Old South Field.[7] First, Extrusions argues the trial court should not have considered the environmental contamination and potential cleanup costs when it calculated just compensation for the property. Second, Extrusions argues the trial court erred in its determination that the fair market value of Old

---

[6] We note the apparent inconsistency of the trial court's final order allowing Extrusions to keep the amount previously paid to it (apparently $211,300 plus interest from the date of conveyance) given its finding of just compensation in the amount of $41,032. We further note that Extrusions' issues on appeal are not moot in light of the trial court's order allowing it to keep the amounts paid out of escrow because Extrusions claims it is entitled to a greater amount as just compensation than was paid by the drain district.

[7] Six of the seven issues on appeal identified by Extrusions relate to the single issue whether the trial court properly considered environmental contamination and potential cleanup costs when determining just compensation.

South Field, without regard to environmental cleanup costs, was $278,800. Third, Extrusions claims the trial court erred in failing to consider and award damages caused to the North Complex as a consequence of the condemnation of Old South Field. Each issue is addressed separately.

II. ANALYSIS

A. CAN ENVIRONMENTAL CONTAMINATION AND CLEANUP COSTS
BE CONSIDERED IN DETERMINING JUST COMPENSATION
IN A CONDEMNATION ACTION?

Our federal and state constitutions prohibit the taking of private property without just compensation. US Const, Am V; Const 1963, art 10, § 2. Just compensation is the full monetary equivalent of the property taken. *Dep't of Transportation v VanElslander*, 460 Mich 127, 129; 594 NW2d 841 (1999), quoting *K&K Constr, Inc v Dep't of Natural Resources*, 217 Mich App 56, 72-73; 551 NW2d 413 (1996), rev'd on other grounds 456 Mich 570; 575 NW2d 531 (1998). The purpose of just compensation is to put a property owner in as good a position as it would have been if the taking had not occurred. *Wayne Co v Britton Trust*, 454 Mich 608, 622; 563 NW2d 674 (1997).

Michigan has adopted the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq.*, which provides procedures for the condemnation, acquisition, or exercise of eminent domain of real property by public agencies. We review de novo issues arising from the interpretation and application of statutes. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). The primary goal of judicial interpretation of statutes is to ascertain and give

effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). If the plain and ordinary meaning of a statute is clear, judicial construction is neither necessary nor permitted. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 166; 610 NW2d 613 (2000). We may not speculate regarding the probable intent of the Legislature beyond the words expressed in the statute. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995). When reasonable minds may differ with respect to the meaning of a statute, the courts must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994).

Section 5 of the UCPA provides that a condemnation complaint "shall ask that the court ascertain and determine just compensation to be made for the acquisition of the [condemned] property." MCL 213.55(1). However, the UCPA provides very little guidance regarding the factors a court should consider when called on to determine just compensation. See MCL 213.70 and 213.73.[8] Courts have generally been constrained only by the requirement that the property owner be placed in as good a condition as the owner would have been had no taking occurred. *Britton Trust, supra.*

---

[8] MCL 213.70 directs that any change in fair market value before the filing of a complaint that was due to the general knowledge of the imminence of acquisition by the agency must be disregarded. MCL 213.73 directs that enhancements to remaining portions of a condemned tract must be considered in determining just compensation. Neither circumstance is at issue in the present case.

Whether environmental contamination and cleanup costs associated with such contamination can be considered in determining just compensation in a condemnation proceeding is an issue of first impression in Michigan. When the UCPA was enacted in 1980, it was silent with respect to the prospect that property acquired through the exercise of eminent domain could be affected by environmental contamination. Since the enactment of the UCPA, courts throughout Michigan and across the country have been inundated with litigation arising from state and federal legislation addressing environmental contamination and recovery of costs associated with environmental cleanup. The Michigan Legislature amended the UCPA in 1993 to incorporate procedures addressing the potential of liability arising from cleanup costs of property subject to acquisition through the exercise of eminent domain.

Section 5 was amended to require the condemning agency to either "reserve[ ] or waive[ ] its rights to bring federal or state cost recovery actions against the present owner of the property arising out of a release of hazardous substances at the property . . . ." MCL 213.55(1), as amended by 1993 PA 308. Section 8 was amended to provide:

> [I]f the agency reserves its rights to bring a state or federal cost recovery claim against an owner, under circumstances that the court considers just, the court may allow any portion of the money deposited pursuant to section 5 to remain in escrow as security for remediation costs of environmental contamination on the condemned parcel. [MCL 213.58(1), as amended by 1993 PA 308.][9]

---

[9] In 1996, this provision was amended further. This case is governed by the pre-1996 amendments. We note, however, that the 1996 amendment

We conclude the UCPA does not vest courts with the authority to account for estimated remediation costs of contaminated property when calculating the amount of just compensation due a property owner. This conclusion is premised on the plain language of the amendments of the UCPA. The amendment of § 5 requires the condemning agency to either waive or reserve its "rights to bring federal or state cost recovery actions . . . ." The amendment of § 8 vests the court with the authority to protect the condemning agency should it prevail in a cost recovery action by allowing "any portion of the money deposited . . . to remain in escrow as security . . . ." This language supports the conclusion that any form of cost recovery arising from environmental contamination is to be pursued in a separate cause of action. There would be no purpose to these amendments if a court, in the process of determining just compensation, could simply deduct remediation costs from the fair market value of the condemned property.

The error in deducting environmental cleanup costs when determining just compensation is evident given that the amendments of the UCPA direct that liability for such costs be determined by way of a separate cause of action. The UCPA simply does not provide a basis for recovering remediation costs. The UCPA only provides the procedures by which an agency may reserve its rights to a cost recovery action and procedures by which a trial court may withhold funds pending resolution of such an action. An agency must bring a separate cause of action under state or federal

did not substantially change the provisions at issue in this case. See MCL 213.58(2), as amended by 1996 PA 474.

law to establish liability for remediation costs. By deducting estimated cleanup costs from a parcel's value in determining just compensation for a taking, a court circumvents any defense a landowner might have to liability for such costs. As in this case where the parties stipulated that the environmental contamination was present on Old South Field when Extrusions purchased the land, the inequity of deducting such costs before any determination of the landowner's liability is clear.[10] See *W R Associates of Norwalk v Comm'r of Transportation*, 46 Conn Supp 355, 360; 751 A2d 859 (1999); *Northeast Economic Alliance, Inc v ATC Partnership*, 1998 WL 197632, * 6-7 (Conn Super, April 16, 1998); *Dep't of Transportation v Parr*, 259 Ill App 3d 602, 606-607; 633 NE2d 19 (1994).

Our holding is not affected by the fact that the 1993 amendment of subsection 8(1) of the UCPA also provides "[n]othing contained in this subsection is intended to limit or expand an owner's or agency's rights to bring federal or state cost recovery claims." MCL 213.58(1), as amended by 1993 PA 308.[11] By its express terms, this limitation relates only to subsection 8(1), which addresses the court's ability to maintain in escrow estimated remediation costs. The above-quoted language does not apply to § 5, which expressly requires the condemning agency to either reserve or waive its rights to pursue cost recovery litigation in a separate proceeding. Moreover, this provi-

---

[10] The inequity is especially evident in this case where the drain district admits it chose not to incur the cost of attempting to prove Extrusions' liability for the contamination and unequivocally stated it did not intend to bring a cost recovery action against Extrusions. See n 4 and 5, *supra.*

[11] See n 9, *supra.*

sion preserves the litigants' right to pursue separate cost recovery actions. Thus, it is consistent with our overall interpretation of the UCPA.

Precluding the consideration of remediation costs when determining just compensation is also consistent with the traditional notion that the landowner should be placed in as good a condition as it would have been had the taking not occurred. *Britton Trust, supra.* The "normal method for determining a condemnation award is to use the market value of the property." *Hwy Comm v Gaffield,* 108 Mich App 88, 93; 310 NW2d 281 (1981), citing *In re Grand Haven Hwy,* 357 Mich 20; 97 NW2d 748 (1959). The mere fact that a property is contaminated provides no significant assistance in determining its fair market value. While the fear of liability arising from environmental contamination may render a property nontransferable, it certainly does not render it valueless. Contaminated properties are like snowflakes; no two are alike. Thus, it is virtually impossible to find a comparable parcel of property on which to base an estimation of value. For this very reason, the Iowa Supreme Court found it appropriate to separate just compensation proceedings from environmental liability determinations. *Alladin, Inc v Black Hawk Co,* 562 NW2d 608, 616 (Iowa, 1997); see also *Parr, supra* at 605.

Determining fair market value of a contaminated property is not as simple as deducting the estimated costs of remediation. The cost of cleanup relates in large part to the extent of the contamination and the future use of the property. The cost to make the property suitable for service as a storm water detention pond may exponentially exceed the cost of cleanup to

use the property for other purposes. This fact is recognized in the UCPA, which pursuant to § 8 only allows the court the authority to hold in escrow the "likely costs of remediation if the property were used for its highest and best use." MCL 213.58(2), as amended by 1996 PA 474; MCL 213.58(1), as amended by 1993 PA 308. Thus, it is clear that the only proper method of arriving at just compensation is to separate the question of just compensation from the question of liability for environmental cleanup.[12] This approach is consistent with the Uniform Standards of Professional Appraisal Practice, which rely on the notion that "value of an interest in impacted or contaminated real estate may not be measured by simply deducting the remediation or compliance cost estimate from the estimated value as if unaffected . . . ." See *Northeast Economic, supra* * 11, quoting Advisory Opinion AO-9 on which the Uniform Standards of Professional Appraisal Practice are, in part, based.

---

[12] There is a split of authority among courts from other states that have addressed this question. Some courts have concluded that evidence of contamination should not be considered in just compensation proceedings. *W R Associates, supra; Northeast Economic, supra; Alladin, supra* at 615-616; *Parr, supra* at 607-608. Other courts have concluded that evidence of contamination is relevant to market value in eminent domain proceedings. *Finklestein v Dep't of Transportation,* 656 So 2d 921, 922 (Fla, 1995); *Stafford v Bryan Co Bd of Ed,* 219 Ga App 750, 752; 466 SE2d 637 (1995), rev'd on other grounds 267 Ga 274; 476 SE2d 727 (1996); *Tennessee ex rel Dep't of Transportation v Brandon,* 898 SW2d 224, 227 (Tenn, 1994); *Olathe v Stott,* 253 Kan 687, 689-690; 861 P2d 1287 (1993); *Redevelopment Agency of Pomona v Thrifty Oil Co,* 4 Cal App 4th 469, 474; 5 Cal Rptr 2d 687 (1992); *Dep't of Health v Hecla Mining Co,* 781 P2d 122, 126 (Colo App, 1989). Significantly, none of these jurisdictions' condemnation statutes contain provisions that may be construed to preclude consideration of environmental remediation costs in determining just compensation. As discussed earlier, the 1993 amendments of Michigan's UCPA establish that liability for remediation costs is to be determined in separate cost recovery proceedings.

Given that the UCPA does not vest courts with the authority to account for estimated remediation costs when calculating just compensation, the trial court erred in the present case in deducting estimated cleanup costs to arrive at a fair market value and just compensation amount. Accordingly, we reverse the trial court's ruling that $41,032 constitutes just compensation for the property.

### B. DID THE TRIAL COURT ERR IN ITS DETERMINATION OF FAIR MARKET VALUE WITHOUT REGARD TO ENVIRONMENTAL CLEANUP COSTS?

Extrusions argues the trial court erred in finding that the value of Old South Field without consideration of environmental contamination was $278,800. A trial court's findings of fact may not be set aside unless they are clearly erroneous. MCR 2.613(C). A finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made. *Meek v Dep't of Transportation*, 240 Mich App 105, 115; 610 NW2d 250 (2000).

The drain district's expert appraiser opined that the value of Old South Field on the date of the taking was $211,300. An appraiser employed by Extrusions concluded the value was $346,300. The trial court averaged those appraisals and found the value of the land at the time of the taking without consideration of cleanup costs was $278,800. The court noted that amount was relatively consistent with the 1993 assessed value of the land, which rendered an actual cash value of $264,600. On appeal, Extrusions claims the court clearly erred in determining the value of the property because the taking occurred in 1994 and the

1993 assessed value was not an accurate indication of value. From the percent increase of the actual cash value of the property from 1991 to 1993, Extrusions extrapolates that the actual cash value of the property in 1994 was no less than $309,497. Assuming, without deciding, that the value of the property in 1994 was $309,497, we find no error. The court did not use the 1993 value in its calculation of value, but instead merely compared it to the average of the two appraisals. The parties presented evidence supporting their appraisers' determinations and the amount that the court determined to be the value of the property falls between the 1993 actual cash value and Extrusions' calculation of the 1994 cash value. Under these circumstances, we cannot say the court clearly erred in finding that the value of Old South Field at the time of the taking without consideration of environmental cleanup costs was $278,800.

### C. DID THE TRIAL COURT ERR IN FAILING TO CONSIDER THE EFFECT OF THE CONDEMNATION OF THE OLD SOUTH FIELD ON THE NORTH COMPLEX?

Extrusions also argues that the trial court clearly erred in finding that the taking did not cause damage to its North Complex. Extrusions claims it could have used Old South Field to build additional warehouse facilities or to add parking spaces.

Our Supreme Court has stated that the when a partial taking occurs

> [t]he measure of damages is the injury done to the fair market value of the entire tract by the taking of only a part. In other words the owner is entitled to recover the difference between the market value of the entire tract before the taking and the market value of what is left after the taking.

[*State Hwy Comm'r v Walma*, 369 Mich 687, 690; 120 NW2d 833 (1963).]

The evidence presented at trial established that at the time of the taking, Old South Field was an environmentally contaminated, vacant plot that was not properly graded for construction. Evidence suggested Extrusions was operating with sufficient warehouse and parking facilities on or near the North Complex. Extrusions does not contest the trial court's finding that its business operations on the North Complex have been unaffected by the taking of Old South Field. Under these circumstances, we cannot say the trial court clearly erred in finding the fair market value of the North Complex was not affected by the taking of Old South Field.

### III. CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.