**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 17, 2003**

SILVER CREEK DRAIN DISTRICT,

    Plaintiff-Appellant,

v                                       No. 119721

EXTRUSIONS DIVISION, INC., and
AZZAR STORE EQUIPMENT, INC,

    Defendants-Appellees,

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

    We granted leave to appeal in this case to consider whether environmental-contamination conditions are factors to be considered when a court is determining fair market value to establish just compensation in a condemnation action under the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq*. We hold that they are to be considered. Accordingly, we reverse the judgment of the Court of Appeals in this regard and remand this matter to the trial court for further

proceedings consistent with this opinion.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Extrusions Division, Inc. (Extrusions), operates a plastics extruding business and owned an eight-acre parcel of vacant land adjacent to its operations complex in Grand Rapids. In 1992, Extrusions applied to the city of Grand Rapids for a permit to build a warehouse on the eight acres. The application was denied, and Extrusions was informed that the Silver Creek Drain District (Drain District), in 1991, had identified the parcel as its desired site for a storm-water retention pond. Extrusions claimed that denial of a permit, together with the failure of the Drain District to commence a condemnation action, amounted to an unconstitutional taking of private property without just compensation. Accordingly, in 1992, Extrusions initiated an inverse-condemnation action against the city and the Kent County Drain Commissioner.

On March 7, 1994, the Drain District, pursuant to the UCPA, tendered a good-faith "just compensation" offer[1] in the amount of $211,300 to Extrusions for the parcel. This offer, as allowed under MCL 213.55(1) of the UCPA, also reserved the

_____

[1]"Before initiating negotiations for the purchase of property, the agency shall establish an amount that it believes to be just compensation for the property and promptly shall submit to the owner a good faith written offer to acquire the property for the full amount so established . . . ." MCL 213.55(1).

2

Drain District's right to proceed against Extrusions in a federal or state action for contamination-cost recovery.[2] Cost-recovery actions are intended to give governmental authorities the ability to seek reimbursement from those responsible for the damage done to the land by the release of hazardous substances. At the time of this litigation, the procedure to reserve the right to bring a cost-recovery action against the condemnee was new, having been established by amendments of the UCPA in 1993. The purpose of the amendments was not merely to allow the condemnor to reserve the right to demand remediation costs, but also to ensure that, if a reservation of rights occurred, the funds for condemnation would be escrowed to satisfy any judgment that the condemnor might eventually secure against the condemnee.[3]

_____

[2]Cost-recovery proceedings may be brought under the federal Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 USC 9601 *et seq.*, or under part 201 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.20101 *et seq.*

[3]As discussed above, § 5 of the amended UCPA (MCL 213.55) requires a condemning agency to deposit its estimated just-compensation amount in escrow when it files the condemnation complaint; this escrowed amount is to pay the condemnee upon the order of the court. MCL 213.55(5); MCL 213.58(4). However, in the 1993 amendments of the UCPA, in order to facilitate the collection of remediation costs of environmental contamination, the Legislature allowed the agency, when it submits a "good faith" written offer, to reserve the right to seek contamination costs from the condemnee. If this is done, the escrowed funds may remain in escrow "as security for remediation costs of environmental contamination . . . ." MCL

(continued...)

On May 26, 1994, the Drain District executed, as required by MCL 213.55(4)(e), a "declaration of taking," which indicated that this private property was being taken for purposes of a necessary public improvement.

In June, the $211,300 good-faith "just compensation" amount was placed in escrow. The Drain District then filed its condemnation action and again reserved the right to bring a federal or state cost-recovery action.

On February 20, 1995, the parties stipulated, and the trial court ordered, that the parcel be conveyed to the Drain District and that the Drain District pay Extrusions $211,300 for the taking. Following this, the Drain District, notwithstanding the stipulation and order, sought an order that would hold the funds in escrow as security for the remediation costs as allowed under the UCPA. Extrusions, in response, citing part 201 of the Natural Resources and

---

[3](...continued)
213.58(2).

However, even if the governmental agency reserves the cost-recovery option against a condemnee, under subsection 6a (MCL 213.56a) a court can order an agency to waive its right to pursue a cost-recovery action under certain circumstances. The predicate for seeking this reversal of the agency's election is that, under part 201 of the NREPA, the condemnee has no liability because it did not cause the contamination. MCL 213.58(3). If the court orders the waiver of the rights, the agency is required to submit a revised good-faith offer. Subsection 6a(3) also allows the parties to a condemnation action to stipulate the reversal of the reservation.

Environmental Protection Act (NREPA), MCL 324.20101 *et seq.*, claimed that it was not the cause of the contamination as identified in the amendments and, thus, was not liable for remediation costs. Accordingly, it argued, on the authority of MCL 213.55(5) and MCL 213.58(4), that the funds should be released. On November 3, 1995, by stipulation, the court ordered the escrowed sums, as well as interest, paid to Extrusions.

In a 1997 bench trial concerning valuation, the court found that the value of the eight-acre parcel, if environmental concerns were ignored, was $278,800. The court then determined that the parcel "was an environmentally contaminated site, with respect to which a reasonably prudent purchaser would have required, at a minimum, a formal Type-C Closure from the [Department of Natural Resources] as a condition precedent to closing."

Because the court found that the reasonable cost of the Type-C closure was $237,768, it concluded that the net fair market value was $41,032. The court entered an order to that effect and reiterated in the order that the once-escrowed $211,300 was awarded to Extrusions.

On appeal, the Court of Appeals reversed in part and

remanded the case to the trial court.[4] The Court of Appeals held that the UCPA gave no authority for a court to consider any contamination factor in the establishment of fair market value. Rather, contamination could only be considered in separate proceedings for remediation costs. It was the Court's position that this outcome was appropriate because § 5 of the UCPA provided "little guidance regarding the factors a court should consider when called on to determine just compensation."[5] Given the minimal guidance, the Court concluded that the plain language of the UCPA amendments addressing federal and state cost-recovery actions meant that only in those separate proceedings could such factors be considered.

We granted leave to appeal to consider the Drain District's claim that a court may consider a parcel's environmental condition as a factor affecting fair market value in a determination of just compensation under the UCPA. We conclude that a court may consider such conditions in establishing fair market value and, thus, reverse the judgment of the Court of Appeals on this issue only.

---

[4]245 Mich App 556, 557-558; 630 NW2d 347 (2001).

[5]*Id.* at 563.

6

## II. STANDARD OF REVIEW

This case presents an issue of statutory interpretation of UCPA provisions. Statutory interpretation is a question of law that we review de novo. *Cruz v State Farm Mut Auto Ins Co,* 466 Mich 588, 594; 648 NW2d 591 (2002).

## III. ANALYSIS

"Eminent domain" or "condemnation" is the power of a government to take private property. The power arises from the sovereign power of the state and is of ancient provenance.[6] The federal government's power in this regard is found in the Fifth Amendment of the United States Constitution, in which it is stated that the government may not take private property unless it is done for a public use and with just compensation. Every Michigan constitution has had a similar clause requiring just compensation in these circumstances.[7] Our current Constitution states that: "[p]rivate property shall not be taken for public use without just compensation . . . ."[8]

In Michigan, in furtherance of this constitutional power, statutes have regulated the exercise and procedure of

---

[6]See *Magna Carta,* Grant 39 (1215): "No freeman shall be . . . disseised . . . unless by the lawful judgment of his peers, or by the law of the land."

[7]See Const 1835, art 1, § 19; Const 1850, art 18, § 2; Const 1908, art 13, § 1.

[8]Const 1963, art 10, § 2.

7

condemnation. In 1980, the Legislature unified all condemnation statutes in the UCPA. Under the act, echoing the Constitution, it was stated at MCL 213.55(1) that a court was to ". . . ascertain and determine just compensation to be made for the acquisition of the [condemned] property."

As is evident, the "just compensation" requirement in the statute mirrors the identical requirement in our Constitution. This reiteration of the constitutional language is significant because to the degree the Constitution has been construed to outline the nature of "just compensation," the statute must be similarly construed because no act of the Legislature can take away what the Constitution has given. *Sharp v City of Lansing*, 464 Mich 792, 810; 629 NW2d 873 (2001).

Thus, we must determine the meaning of the phrase "just compensation" in our Constitution. As we recently outlined in *Michigan Coalition of State Employee Unions v Civil Service Comm,* 465 Mich 212, 222-223; 634 NW2d 692 (2001), in analyzing constitutional language, the first inquiry is to determine if the words have a plain meaning or are obvious on their face. If they are, that plain meaning is the meaning given them. If, however, the constitutional language has no plain meaning, but is a technical, legal term, we are to construe those words in their technical, legal sense. Moreover, in that undertaking, we are to rely on the understanding of the terms by those

sophisticated in the law at the time of the constitutional drafting and ratification. The rule is, as we said in *Michigan Coalition*, that "if a constitutional phrase is a technical legal term or a phrase of art in the law, the phrase will be given the meaning that those sophisticated in the law understood at the time of enactment unless it is clear from the constitutional language that some other meaning was intended."[9]

The meaning of "just compensation" cannot be discerned merely by a careful reading of the phrase. The words themselves, as the Court of Appeals found, just do not inform a court about the potential complexity and variety of factors to be considered in determining value.[10] This circumstance is

_____

[9]465 Mich 223. We also pointed out in *Michigan Coalition, id.* at n 9, that the same rule, pursuant to the Legislature's directive at MCL 8.3a, applies to the construction of a statute.

[10]It is, perhaps, useful to illustrate the correctness of the point, inasmuch as the partial concurrence and dissent of Justice Weaver asserts the contrary. In establishing value for residential properties, for example, can sentimental factors such as long-time ownership or historic importance be considered? Or in the case of commercial properties, can business interruption be considered in establishing value and, if so, how? Should an income-capitalization approach be considered in a business valuation, or should some other approach, such as cost-less-depreciation or sales of comparable properties be used to assist in fixing value? As is obvious, one cannot merely review the dictionary definitions of "just" and "compensation" and combine them to produce a coherent meaning for this phrase. Rather, as a result of longstanding legal practice and custom, as revealed
(continued...)

not unusual in the realm of statutory construction. For example, it can be seen also when statutes, as they occasionally do, use words such as "negligence," "due process," or "equity." These are words with meanings that are not generally self-evident from a mere reading of the words or an assessment of their definitions in a dictionary. They are, in this respect, unlike self-evident words such as "bridge," "road," "building," or "horse." Rather, they are words that fall into that category we have described as technical legal terms or phrases of art in the law, and thus they are to be given the meaning that those sophisticated in the law gave them at the time of enactment. We believe it is necessary, if the law is to be applied uniformly across the state, that this class of words—words that are freighted with historic meaning—be given the same legal meaning in all our courts rather than allowing each court to impose its own meaning. to hold otherwise would all but ensure in similar cases different outcomes in different courts, as Justice Weaver, drawing from her opinion would apparently be content to allow. This means

---

[10](...continued)
through countless judicial opinions over the centuries, this phrase means something more than the sum of its discrete parts. That juries would make decisions on these issues, after being instructed on the law, is not contradictory to the point we raise. That is always the process whether the statute at issue is susceptible to plain-meaning analysis or is interpreted using some other method of statutory explication.

that, in this case, it is appropriate to review the consensus understanding in 1963, by those skilled in this area of law, of the meaning of "just compensation."

Throughout our history and clearly by the 1960s, it was uncontroversial that a determination of "just compensation" required the consideration of all the multiplicity of factors that go into making up value. In the nineteenth century, while summarizing just compensation and its meaning in American constitutional law, Michigan Supreme Court Justice Thomas M. Cooley, in his treatise *The General Principles of Constitutional Law in the United States of America,* said:

> The rule by which compensation shall be measured is not the same in all cases, but is largely affected by the circumstances. If what is taken is the whole of what the owner may have lying together, it is clear that he is entitled to its value, judged by such standards as the markets and the opinions of witnesses can afford, and that this, except in extraordinary cases, must be the full measure of his injury.[11]

The United States Supreme Court has had a similar and unvarying view of this matter, holding in *Searl v Lake Co School Dist No 2,* 133 US 553, 564; 10 S Ct 374; 33 L Ed 740 (1890), that the value of land must include "every . . . element entering into its cash or market value, as tested by its capacity for any and all uses . . . ." Then, again, in

---

[11]Cooley, *Constitutional Law* (Boston; Little, Brown and Co, 1880), p 341.

1933, the Supreme Court held that "[t]he requirement that 'just compensation' shall be paid is comprehensive and includes all elements . . . ." *Seaboard A L R Co v United States,* 261 US 299, 306; 43 S Ct 354; 67 L Ed 664 (1923); accord *Jacobs v United States,* 290 US 13, 16-17; 54 S Ct 26; 78 L Ed 142 (1933). The calculation is to "include any element of value that [property] might have by reason of special adaptation to particular uses." *Clark's Ferry Bridge Co v Pub Service Comm,* 291 US 227, 238; 54 S Ct 427; 78 L Ed 767 (1934). Yet again in 1956, the high court held that "[j]ust compensation includes all elements of value that inhere in the property . . . ." *United States v Twin City Power Co,* 350 US 222, 250-251; 76 S Ct 259; 100 L Ed 240 (1956).[12]

Michigan's understanding of just compensation has been identical in all relevant particulars.[13] In *In re Widening of Gratiot Avenue,* 294 Mich 569, 574-575; 293 NW 755 (1940), we explained that "'[t]he determination of value is not a matter of formulas or artificial rules, but of sound judgment and

_____

[12]This continues to be the universal rule. As it was stated more recently, just compensation "has been held to be equivalent to the full value of the property. All elements of value inherent in the property merit consideration in the valuation process." 4 Nichols, Eminent Domain (rev 3d), ch 12, § 12.01, pp 12-2 to 12-3.

[13]The effect on market value of the condemnation proceeding itself may not be considered as an element of value. MCL 213.70(1); *In re Urban Renewal, Elmwood Park Project,* 376 Mich 311, 318; 136 NW2d 896 (1965).

discretion based upon a consideration of all the relevant facts in a particular case.'" In considering various factors, we have held that compensation may include an award for the taking of leasehold, see *id*.; for fixtures, see *In re Slum Clearance,* 332 Mich 485; 52 NW2d 195 (1952); for business-interruption expenses, see *In re Grand Haven Hwy,* 357 Mich 20; 97 NW2d 748 (1959); and even for the increase in value attributable to the reasonable probability that the property would be rezoned, see *State Hwy Comm'r v Eilender,* 362 Mich 697; 108 NW2d 755 (1961). Thus, in our law, "just compensation" was a legal phrase of art in 1963 that meant, and still means, that the proper amount of compensation for property takes into account all factors relevant to market value.[14] It is this meaning that the constitutional drafters and ratifiers are held to have understood when they were adopting the Michigan Constitution of 1963, and a similar understanding is attributed to the legislators, who also used the phrase "just compensation" when they enacted the UCPA in 1980.

That the legislators who amended the UCPA in 1993 provided

---

[14]We reiterated the general rule recently in *Dep't of Transportation v Van Elslander,* 460 Mich 127, 129-130; 594 NW2d 841 (1999), where we described what is relevant to just compensation as "any evidence that would tend to affect the market value of the property as of the date of the condemnation . . . ."

the procedures and means for securing remediation costs and dovetailed those with the just-compensation determination indicates no intent to abrogate the meaning of "just compensation" established in our jurisprudence. Indeed, to attribute such an intent, i.e., the intent to diminish a constitutional standard by statute, is to place the legislators in the posture of acting unconstitutionally. This we avoid unless no other construction is possible[15] and, as such an alternate construction is possible, we adopt it.

The Court of Appeals error was to utilize the plain-language doctrine in a context where it was inapplicable. The phrase "just compensation" cannot be analyzed on the basis of the plain understanding each word conveys, but is a phrase of art that imports with it all the understandings those sophisticated in the law give it.

Moreover, we agree with the argument made in the brief amicus curiae of the Attorney General, on behalf of the Michigan Department of Transportation, that the Court of Appeals was led to error by the commingling of two different concepts: (1) accounting for contamination in a determination of fair market value and (2) making an assessment of liability and damages for the cost of remediation of environmental

---

[15]See *Gora v Ferndale,* 456 Mich 704, 722 n 15; 576 NW2d 141 (1998).

contamination.

As the Attorney General pointed out, a condemnation action is an in rem proceeding governed by the UCPA. It is instituted to allow a state agency to take title to privately owned property; thus, the agency and the owner are parties. An essential part of the proceeding is the determination of the fair market value of the property. Because this proceeding is not designed to assign liability for environmental contamination, the value of the property is unaffected by whether its owner would be liable for the contaminated state of the property. The estimated costs of remediation are relevant only as they pertain to the fair market value of the property.

In contrast, a cost-recovery action under Michigan's environmental-cleanup laws is an in personam proceeding specifically designed to assign liability for remediation costs. Those costs are typically sought under CERCLA or the NREPA and the fair market value of property is not relevant in such proceedings. Further, in a cost-recovery action, in addition to the agency and the owner, any other person or entity, such as prior owners, lessees, adjacent property owners, or other third parties who may have contributed to the contamination, may be parties. Finally, that the damages awarded in a cost-recovery action are different, sometimes

15

dramatically so, from the amount by which contamination reduced fair market value,[16] makes manifest how different these proceedings are. What is to be grasped, then, is that the primary connection between a condemnation proceeding and a cost-recovery action is the escrow that may be created during the condemnation proceeding to provide security for the payment of the potential cost-recovery award.

The trial court, we believe, understood this matter properly and merely considered contamination as one factor, albeit a significant one, in establishing a fair market value. It was the trial judge's conclusion that any purchaser would have insisted on a minimal cleanup (the Type-C closure) that would have made the property useable. The cost of this Type-C closure is far different from the amount remediation would have cost.[17] Thus, we conclude that the trial court made its just-compensation determination not on the basis of Extrusions' liability for cleanup costs, but on the basis of the effect of contamination on the parcel's fair market value. This was an appropriate way to consider contamination in a just-compensation proceeding under the UCPA.

_____

[16]The actual cost of remediation in this case was approximately $2.3 million, while the loss of value caused by the contamination was found by the trial court to be $237,768.

[17]See n 16.

16

We reverse that portion of the judgment of the Court of Appeals holding that the UCPA does not vest courts with the authority to consider contamination and how it affects fair market value when determining just compensation in a condemnation proceeding. In all other respects, we affirm the Court of Appeals and remand this case for proceedings consistent with this opinion.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

SILVER CREEK DRAIN DISTRICT,

    Plaintiff-Appellant,

v                                                    No. 119721

EXTRUSIONS DIVISION, INC, and
AZZAR STORE EQUIPMENT, INC,

    Defendants-Appellees.

_____

CAVANAGH, J. (*concurring*).

    Although the majority arrives at the correct result, it unnecessarily reaches a constitutional issue.  We have stated previously, "there exists a general presumption by this Court that we will not reach constitutional issues that are not necessary to resolve a case."  *Booth Newspapers, Inc v Univ of*

*Michigan Bd of Regents,* 444 Mich 211, 234; 507 NW2d 422 (1993); see also *Taylor v Auditor General,* 360 Mich 146, 154; 103 NW2d 769 (1960).  Because resolution on statutory grounds alone would suffice, I would not reach the constitutional issue.

Additionally, I write separately to note that I am concerned about the majority's focus on original intent.  As I noted in my concurrence in *WPW Acquisition Co v City of Troy,* 466 Mich 117, 128-130; 643 NW2d 564 (2002), the drafters' intent is but one method among many useful in the endeavor to properly interpret our constitution.

                          Michael F. Cavanagh
                          Marilyn Kelly

2

                    S T A T E   O F   M I C H I G A N

                            SUPREME COURT


SILVER CREEK DRAIN DISTRICT,

        Plaintiff-Appellant,

v                                                    No.  119721

EXTRUSIONS DIVISION, INC.,
AZZAR STORE EQUIPMENT, INC,

        Defendant-Appellees.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

        I concur in the result only of the majority.  I write

separately to express my disagreement with the majority's

construction of the constitutional concept, "just

compensation."[1]  The majority suggests that "just

_____

        [1]Article 10, § 2 of the Michigan Constitution provides:

        Private property shall not be taken for public
        use without just compensation therefor being first
        made or secured in a manner prescribed by law.
        Compensation shall be determined in proceedings in
        a court of record.

                                        (continued...)

compensation" is a "technical legal term or phrase of art" that cannot be grasped by those not "sophisticated in the law." *Ante* at 10. This incorrect suggestion leads the majority to conclude that the meaning of "just compensation" must be restricted to the "consensus understanding in 1963, by those skilled in this area of the law, of the meaning of 'just compensation.'" *Ante* at 11.

While it may be that the understanding of "just compensation" of those sophisticated in the law of condemnation in 1963 may not differ significantly from that of the common person, either past or present, this Court should not engage in a method of constitutional construction that unnecessarily sidesteps the long-established primary rule of constitutional construction. The primary rule[2] of constitutional construction is that constitutional language is to be interpreted according to "common understanding" as

---

[1](...continued)
This case was brought under the Uniform Condemnation Procedures Act, MCL 213.51 *et seq.*, which prescribes the manner in which just compensation is "first made or secured" pursuant to Const 1963, art 10, § 2.

[2]If the plain meaning is unascertainable, secondarily, "the circumstances surrounding the adoption of the constitutional provision and the purpose sought to be accomplished may be considered . . . . Finally, whenever possible, an interpretation that does not create constitutional invalidity is preferred to one that does." *State Highway Comm v Vanderkloot*, 392 Mich 159, 179; 220 NW2d 416 (1974)(opinion by WILLIAMS, J.)

2

described by Justice CooLEY:

> "A constitution is made for the people and by
> the people. The interpretation that should be
> given it is that which reasonable minds, the great
> mass of the people themselves, would give it. '. .
> . the intent to be arrived at is that of the
> people, and it is not to be supposed that they
> have looked for any dark or abstruse meaning in
> the words employed, but rather that they have
> accepted them in the sense most obvious to the
> common understanding . . . .'" [*Traverse City
> School Dist v Attorney General*, 384 Mich 390, 405;
> 185 NW2d 9 (1971).]

The Supreme Court has reiterated this primary rule of constitutional construction: "Each provision of a State Constitution is the direct word of the people of the State, not that of the scriveners thereof." *Lockwood v Comm'r of Revenue*, 357 Mich 517, 565; 98 NW2d 753 (1959). Thus, when attempting to interpret a constitutional provision, "'the primary source for ascertaining its meaning is *to examine its plain meaning as understood by its ratifiers* at the time of its adoption.'" *People v Bulger*, 462 Mich 495, 507; 614 NW2d 103 (2000), quoting *Charles Reinhart Co v Winiemko,* 444 Mich 579, 606; 513 NW2d 713 (1994).

Thus, the issue in this case is whether the term "just compensation" can be said to possess a "plain meaning." Contrary to the majority's suggestion, the meaning of "just compensation" is neither difficult to discern nor does it require "sophistication in the law" to be grasped. *Ante* at

3

9-10, generally.[3]

"Just compensation" has long been readily and reasonably understood to be that amount of money that puts the property owner whose property is taken in as good, but not better, a financial position after the taking as the property owner enjoyed before the taking.[4]  The measure of "just compensation" is "the property owner's loss rather than the government's gain."[5]

Though determining the dollar figure that most accurately describes the property owner's loss can be a complicated task, such complication does not render "just

---

[3]In certain circumstances, it is appropriate and necessary to consider the meaning of constitutional terms that are established in the law.  See, e.g., *Michigan United Conservation Clubs v Secretary of State (After Remand),* 464 Mich 359, 414-420; 630 NW2d 297 (2001)(WEAVER, J., dissenting)(construing "acts making appropriations" in art 2, § 9 of the Michigan Constitution), and *WPW Acquisition Co v City of Troy*, 466 Mich 117, 123; 643 NW2d 564 (2002)(holding unconstitutional the Legislature's definition of a statutory term that conflicted "with the established meaning of the term at the time that it was" adopted by constitutional amendment).

[4]*Wayne Co v Britton Trust,* 454 Mich 608, 622; 563 NW2d 608 (1997); *In re Edward J Jefferies Homes Housing Project*, 306 Mich 638, 650; 11 NW2d 272 (1943); *In re Widening of Bagley Ave,* 248 Mich 1, 5; 226 NW 688 (1929).

[5]*Brown v Legal Foundation of Washington,* __ US __,__; 123 S Ct 1406, 1419; 155 L Ed 2d 376 (2003), in which the United States Supreme Court reiterated that "[t]his conclusion is supported by consistent and unambiguous holdings in our cases."  See also *Boston Chamber of Commerce v Boston*, 217 US 189, 195; 30 S Ct 459; 54 L Ed 725 (1910).

4

compensation" a "technical legal term or phrase of art." Indeed, though complicated, that task was expressly dedicated by the 1850 and 1908 constitutions of Michigan to a jury of "twelve freeholders, residing in the vicinity of such property, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law . . . ." Const 1850, art 18, § 2; Const 1908, art 13, § 2. Further, this Court has said of condemnation proceedings, "the jury is the judge of law and fact. Its conclusions need not be based entirely on the testimony but it may use its own judgment and knowledge from a view of the premises and its experience as freeholders." *Dep't of Conservation v Connor*, 316 Mich 565, 593; 25 NW2d 619 (1947).[6] While the task of quantifying just compensation can be a complicated task, in light of this history, it cannot seriously be suggested that the concept of "just compensation" is anything but obvious on its face.

In addition, I write to express concern with the majority's adoption of a one-size-fits-all rule in the

---

[6]Under the current constitutional and statutory framework, a just-compensation award is determined by a jury or the court. Const 1963, art 10, § 2 provides in pertinent part that "[c]ompensation shall be determined in proceedings in a court of record." MCL 213.63 provides in pertinent part, "[t]he jury or the court shall award in its verdict just compensation for each parcel."

context of just compensation.  The majority asserts that contamination costs must be considered in just-compensation determinations or the court would "place the legislators in the posture of acting unconstitutionally."  *Ante* at 14.[7] This conclusion is certainly debatable.  The statute at issue provides:

> Before initiating negotiations for the purchase of property, the agency shall establish an amount that it believes to be just compensation for the property and shall submit to the owner a good faith written offer to acquire the property for the full amount so established. . . .  The good faith offer shall state whether the agency reserves or waives its rights to bring federal or state cost recovery actions against the present owner of the property arising out of a release of hazardous substances at the property and the agency's appraisal of just compensation for the property shall reflect such reservation or waiver. The amount shall not be less than the agency's appraisal of just compensation for the property. . . . [MCL 213.55(1).]

The statute's express consideration of what compensation is just under the constitution does not necessarily mean that the Legislature intended, or was constitutionally obligated to require, that a good-faith offer be reduced by the cost

---

[7]The majority notes that "the primary connection between a condemnation proceeding and a cost-recovery action is the escrow that may be created during the condemnation proceeding to provide security for the payment of the potential cost-recovery award."  *Ante* at 16.  However, the existence of the escrow mechanism does not answer whether the Legislature intended that the cost of remediation should be considered in condemnation proceedings.

of remediation in order to constitute "just compensation." Though market value typically serves as a measure of just compensation, it is not the sole criterion. As recognized by the United States Supreme Court, where the market value is "too difficult to find" or the "payment of market value would result in 'manifest injustice' to the owner or the public," the market value should not be the measure of just compensation. *Kirby Forest Industries, Inc v United States*, 467 US 1, 10; 104 S Ct 2187; 81 L Ed 2d 1 (1984).

Because the effect of contamination on the value of a property is difficult to determine and is susceptible to different remediation and calculation approaches, it is perhaps more appropriate to leave this fact-laden and case-specific determination to the judge or jury rather than the majority's one-size-fits-all formula or artificial rule. A determination by a judge or jury is consistent with this Court's prior holdings that just-compensation awards in condemnation proceedings should be decided on a case by case basis. "[T]he determination of value in condemnation proceedings is not a matter of formula or artificial rules but of sound judgment and discretion based upon a consideration of all relevant facts in a particular case." *In re Grand Haven Hwy*, 357 Mich 20, 28-29; 97 NW2d 748 (1959), citing *In re Widening of Gratiot Avenue*, 294 Mich

7

569; 293 NW 755 (1940).

Elizabeth A. Weaver

8