WAYNE COUNTY v BRITTON TRUST

Docket No. 104299. Argued April 9, 1997 (Calendar No. 8). Decided
June 17, 1997. Rehearing denied 456 Mich 1201.

Wayne County brought a condemnation action in the Wayne Circuit
Court against the William G. and Virginia M. Britton Trust and Wil-
liam G. Britton, to acquire a one-acre parcel of land and an indus-
trial building needed to expand the Detroit Metropolitan Wayne
County Airport. The defendants stipulated the necessity of the tak-
ing, but moved to compel the county to compensate them for their
movable property on the basis of their value-in-place, rather than
detach/reattachment costs. The court, John H. Gillis, Jr., J., relying
on SJI2d 90.20 and 90.21, granted the defendants' motion because
they elected not to move these items. The Court of Appeals, HOOD,
P.J., and REILLY and M. MORRIS, JJ., affirmed in an opinion per
curiam, holding that, although the trial court erred in making its
ruling solely on the basis of the Standard Jury Instructions, it
reached the right result in ordering the county to compensate the
defendants for the value-in-place of the movable property. The
Court further defined "fixtures" according to the three-part test of
*Morris v Alexander*, 208 Mich 387 (1919), and remanded the case
for consideration of whether the objects claimed to be movable fix-
tures and movable business property are fixtures and thus compen-
sable on a value-in-place basis in a condemnation action (Docket
No. 163583). The plaintiff appeals.

In a unanimous opinion by Justice RILEY, the Supreme Court
*held*:

Property is a fixture if it is annexed to realty, whether the annex-
ation is actual or constructive; its adaptation or application to the
realty being used is appropriate; and there is an intention to make
the property a permanent accession to the realty. A condemnee
may elect to receive either the value-in-place or the
detach/reattachment costs for fixtures.

1. The term "fixture" necessarily implies something having a pos-
sible existence apart from realty, but which, by annexation, may be
assimilated into realty. If an object is not physically affixed to
realty, it may become a fixture by constructive annexation, e.g.,
where its removal from the realty would impair both its value and

the value of the realty, or where an object would be useless without the realty and the realty useless without the object. Adaptation is the relationship between the chattel and the use made of the realty to which the chattel is annexed. Intent to make an article a permanent accession to realty may be inferred from the nature of the article affixed, the purpose for which it was affixed, and the manner of annexation. In this case, the Court of Appeals correctly held that *Morris* sets forth the proper test to determine what constitutes a fixture for condemnation purposes. SJI2d 90.20, on which the trial court relied, permits a jury to conclude, contrary to *Morris*, that almost any piece of property is a fixture. Thus, SJI2d 90.20 should no longer be used.

2. The law of eminent domain in Michigan requires a condemnor of private property to render just compensation to the property owner. Because fixtures enhance the value of realty taken, they must be included when valuing the realty. If they are removed, the value of the realty must be decreased by the value of the fixtures removed, but just compensation must include the cost of detaching and reattaching the fixture because the value of the fixture as severed will be decreased. Thus, the proper measure of damages is the value of the land as enhanced by the fixtures, less the value of the fixtures in view of the necessity of severing them, plus the cost of detaching and reattaching the fixtures. A condemnee automatically receives value-in-place for fixtures; however, an election to remove fixtures is an election to receive detach/reattachment costs. With regard to personal property, the condemnee has no right of election, but is entitled to moving costs. Because SJI2d 90.21 is erroneous to the extent that it permits a condemnee to receive value-in-place for all equipment, machinery, and personal property, it also should not be used.

Affirmed.

211 Mich App 688; 536 NW2d 598 (1995) affirmed.

*State Hwy Comm'r v Miller*, 5 Mich App 591; 147 NW2d 424 (1967), overruled.

*Algonac v Robbins*, 69 Mich App 409; 245 NW2d 68 (1976), overruled.

SJI2d 90.20, 90.21, disapproved.

*Jennifer M. Granholm*, Corporation Counsel, *John C. Burchett*, Assistant Corporation Counsel, and *Fink, Zausmer, P.C.* (by *Mark J. Zausmer* and *Gary K. August*), for the plaintiff-appellant.

*Mason, Steinhardt, Jacobs & Perlman, P.C.* (by *Frederick D. Steinhardt, Walter B. Mason, Jr.*, and *H. Adam Cohen*), for the defendants.

Amici Curiae:

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Patrick F. Isom*, Assistant Attorney General, for Department of Transportation.

*Phyllis A. James*, Corporation Counsel, and *Thomas B. Serowik*, Assistant Corporation Counsel, for City of Detroit.

*Ackerman & Ackerman, P.C.* (by *Alan T. Ackerman* and *Gary D. Strauss*), for defendants.

RILEY, J. In this appeal, we address two issues: (1) what constitutes a "fixture" for purposes of the condemnation process, and (2) whether a condemnee can force the condemning agency to pay either the value-in-place or the detach/reattachment costs for his fixtures.[1] We reaffirm the three-part test enumerated in *Morris v Alexander*, 208 Mich 387; 175 NW 264 (1919), for determining what constitutes a fixture. Property is a fixture if (1) it is annexed to the realty, whether the annexation is actual or constructive; (2) its adaptation or application to the realty being used is appropriate; and (3) there is an intention to make the property a permanent accession to the realty.

---

[1] The value-in-place is the value of a fixture as attached to the realty. The detach/reattachment costs is the cost of detaching the fixture, moving it to the condemnee's other realty, and reattaching it.

We further hold that a condemnee may receive either the value-in-place or the detach/reattachment costs for his fixtures. If the condemnee does nothing, he will receive the value-in-place for his fixtures because the condemning agency includes the value-in-place of fixtures when valuing the condemned realty. If the condemnee elects to remove his fixtures from the condemned realty, he will receive the cost of detaching the fixtures, moving them to his other realty, and reattaching them. For condemnees who make such an election, the just compensation paid for the condemned realty will simultaneously be decreased by the value-in-place of the fixtures. Thus, the proper measure of damages would be the value of the land as enhanced by the fixtures, less the value of the fixtures in view of the necessity of severing them, plus the cost of detaching and reattaching the fixtures. Accordingly, we affirm the decision of the Court of Appeals.

### FACTS AND PROCEEDINGS

Defendants were owners of a one-acre parcel of realty located just west of the Detroit Metropolitan Wayne County Airport, where they operated several small industrial businesses in the industrial building located on the land. In 1992, in the course of acquiring 550 acres of land needed to expand the airport, plaintiff Wayne County offered defendants $188,580 as just compensation for the property pursuant to the Uniform Condemnation Procedures Act (UCPA), MCL 213.55; MSA 8.265(5). The offer was based on (1) the county's appraised value of the real estate ($155,000), (2) the county's appraised value-in-place of "immovable fixtures" ($13,075), and (3) the county's appraised

estimate of detach/reattachment costs for movable property ($20,505).

Defendants rejected the county's offer on the basis of the county's valuation of defendants' movable property. The county subsequently filed a condemnation action in the Wayne Circuit Court. Defendants stipulated the necessity of the taking, leaving compensation as the only remaining issue. Defendants filed a motion to compel the county to honor their election to be compensated for their movable property[2] on the basis of their value-in-place ($190,405),

---

[2] The parties repeatedly use the term "trade fixtures" in their briefs. It is clear from defendants' motion to compel plaintiff to honor their election that they used that term to refer to movable machinery and equipment:

4. Mr. Britton owns various items of movable machinery and equipment intended to be permanently utilized in the business operation. See representative portions of the itemized list in the County's apprais[a]l, Exhibit A.

5. For many years, volume condemning authorities such as the City of Detroit and the MDOT routinely offered owners of *movable* machinery and equipment (often called "trade fixtures") an election as to how they would be compensated therefor[e] on an item by item basis . . . .

The "trade fixture" appraisal listed well over one hundred items, including the following: tanks, air compressors, forklifts, scales, storage racks, hose-braiding machines, pipe-threading machinery, hydraulic pumps, grinding machinery, and work tables. It also included such miscellaneous items as a coat tree, an electric clock, a first-aid kit, file cabinets, a refrigerator, a metal folding chair, a flatbed truck, trash drums, and lawn mowers.

Despite the use of the term trade fixture by the parties and the Court of Appeals, this Court notes that a trade fixture is a fixture installed on a leasehold by a tenant that the tenant may remove at the termination of the lease. The concept has no legal application in this case. See *In re Widening of Gratiot Ave*, 294 Mich 569, 577; 293 NW 755 (1940); 9 Michigan Civil Jurisprudence (1992 rev vol), Fixtures, § 3, pp 415-416. If property, movable or not, satisfies the test enumerated in *Morris v Alexander*, *supra*, it is a fixture. If it does not satisfy that test, it is not a fixture.

rather than detach/reattachment costs ($20,505).[3] Defendants relied on SJI2d 90.20[4] and SJI2d 90.21[5] in making this election. The county objected, arguing that it was only obligated to pay defendants the lesser value of the cost of moving or the value-in-place for their movable property. The trial court, relying on SJI2d 90.20 and 90.21, ruled in defendants' favor:

---

[3] Defendants asserted that they did not desire to restart their business at another location. Furthermore, defendants also did not claim that the taking included the "going concern value" of their company, i.e., the company's goodwill. Therefore, we do not address that issue today.

[4] SJI2d 90.20 provides:

The owner is entitled to be compensated for [his/her] fixtures, equipment, machinery and personal property.

The definition of fixtures or equipment or machinery for which compensation may be allowed is very broad. Fixtures are not limited to things actually attached to a building. Fixtures may include small machinery, even hand tools. The test is whether or not it was the intent of the owner to permanently use the item in the operation of [his/her] business. If the answer is yes, then the item is considered to be constructively annexed to the freehold, and a part of the owner's equipment and fixtures for which compensation shall be allowed.

[5] SJI2d 90.21 provides:

With regard to fixtures, equipment, machinery and personal property, you are to award the owner the present value-in-place of those items *unless the owner has elected to remove some or all of them.*

If the owner elects to move some or all of [his/her] fixtures, equipment, machinery and personal property, then as to those items moved you should award the total cost of removing those items and reinstalling them in a new location and the loss in value caused by the move.

However, if the cost of moving any particular item to a new location is greater than that item's value-in-place, you cannot award in your verdict more than the value-in-place. In other words, the government cannot be required to pay more to move a particular item than that item is worth.

Improvements made by a tenant are to be valued on the basis of their useful life without regard to the term of the lease. [Emphasis added.]

The Standard Jury Instruction regarding compensable business property, with regard to fixtures, equipment, machinery and personal property, you are to award the owner the present value-in-place of those items unless the owner has elected to remove some or all of them. Here, he's not elected to remove them. Defendant's motion is hereby granted.

The Court of Appeals subsequently affirmed the trial court's decision. 211 Mich App 688, 692; 536 NW2d 598 (1995). It held that although the trial court "clearly erred in making its ruling solely on the basis of the Standard Jury Instructions," it reached the right result "when it ordered plaintiff to honor defendants' election to leave their trade fixtures in place and be compensated for their value in place." *Id.* at 697. The Court of Appeals further defined "fixtures" according to the three-part test established in *Morris, supra,* and remanded for the trial court's consideration of "whether the objects claimed by defendants to be movable fixtures and movable business property are fixtures and thus compensable on a value-in-place basis in a condemnation action." *Id.* at 698. On October 30, 1996, this Court granted the county's motion for leave to appeal. 453 Mich 927.

I

A

Both issues addressed by this Court concern questions of law. Accordingly, our review is de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).

B

We first address whether the Court of Appeals was correct in defining "fixtures." "[T]he term 'fixture'

necessarily implies something having a possible existence apart from realty, but which may, by annexation, be assimilated into realty." *Kent Storage Co v Grand Rapids Lumber Co*, 239 Mich 161, 164; 214 NW 111 (1927). The Court of Appeals defined the term fixture pursuant to the three-part test enumerated in *Morris, supra* at 390-391: Property is a fixture if the following three criteria exist:

> "[First], annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold."

We note that stocks of goods or personal property are clearly not fixtures. *In re Widening of Gratiot Ave*, 294 Mich 569, 577; 293 NW 755 (1940).

### 1. ANNEXATION TO REALTY

Annexation refers to

> the act of attaching or affixing personal property to real property and, as a general proposition, an object will not acquire the status of a fixture unless it is in some manner or means, albeit slight, attached or affixed, either actually or constructively, to the realty. That is, if the object is not attached to the land or to some structure or appliance which is attached to it, it will retain its character as personalty even though intended for permanent use on the premises. [35 Am Jur 2d, Fixtures, § 5, p 703.]

If an object is not physically affixed to the realty, it may acquire the status of a fixture by constructive annexation. *Id.*, § 11, p 707. This Court first addressed constructive annexation in *Colton v Michigan Lafayette Building Co*, 267 Mich 122; 255 NW 433

(1934). In *Colton*, Lafayette subleased from Shelby Land Company realty on which Lafayette erected an office building. After Lafayette defaulted, it surrendered possession of the building to Shelby and assigned to it all subleases with tenants in the building. Lafayette subsequently sought to recover from Shelby certain property it left in the building. This property included articles such as:

> [1.] repair parts to elevator switchboard, elevator rugs, window shades, awnings, double doors and trim, base and shoe, red gum partitions, storm doors, elevator uniforms, window curtains, rubber matting, entrance mats, chain falls, Minneapolis thermostats and clock, wall case and mirror, [and] pump tanks for elevator [.] . . . [2.] unused supplies . . . such . . . as paper towels, soap, paint, and electric light bulbs[;] . . . used supplies and detached equipment such as pails, mops, vacuum cleaners, ladders, electric grinder, drill press, etc. . . . [*Id.* at 127.]

The issue before us was whether those articles were fixtures or personal property. Our focus was whether those articles were constructively annexed to the realty. We held that the first set of articles were fixtures because their removal from the realty would impair both their value and the value of the realty:

> These articles could not be removed from the building or transported from place to place without impairing their value as well as the value of the building. This building was erected for the purpose of renting stores and offices to the public and in order to be rentable must have various articles or accessories such as those listed above. [*Id.*]

As to the second set of articles, we concluded that they were personal property, characterizing them as "ordinary movable office furniture." *Id.*

We next addressed constructive annexation in *In re Slum Clearance*, 332 Mich 485, 494-495; 52 NW2d 195 (1952), in which we considered whether the condemnee's molten metal and solutions, used in melting pots (a fixture) to create plates, were fixtures. The specific issue was whether the molten steel and solutions were constructively annexed to the realty (or to a fixture on the realty). Relying on *Colton, supra,* we concluded that the molten metal and solutions were constructively annexed to the melting pots (a fixture on the realty) because the molten metal and solutions were useless without the melting pots and the melting pots were useless without the molten steel and solutions:

> Under the circumstances of the instant case, the solutions and molten metal are trade fixtures, in the same category as the accessories and spare parts usable in connection with machinery but not actually affixed to the machinery or a part of land and buildings. The tanks are admittedly trade fixtures, but without the solutions they will not plate anything. The solutions are useless except for use in the plating tanks. They are used only in connection with the tanks, they are expressly made for the purpose and they are essential to the plating operation. The solutions are not sold and are not stocks of merchandise. We consider these solutions are analogous to the detached special parts of, or special tools for, a machine and like the machine (the tanks, in this instance) are constructively annexed to the freehold, and a part of the owner's trade fixtures. The same applies to the contents of the melting pots. This liquid metal is used only as part of the plating operation and is a trade fixture.

The rationale used by this Court follows the approach used by other jurisdictions.[6] We believe that the United States Court of Appeals for the Fifth Circuit succinctly stated the law of constructive annexation:

> "The doctrine of constructive annexation has frequently been applied in the case of articles which are not themselves actually or directly annexed to the realty, but are part of, or accessory to, articles which are so annexed. Thus, where the principal part of the machinery is fixture due to actual annexation to the realty, the parts of it, although not actually annexed to the freehold, are fixture[s] where they would, if removed, leave the principal part unfit for use, and where of themselves they are not capable of general use elsewhere." [*Carmichall v United States*, 273 F2d 392, 395 (CA 5, 1960), quoting 22 Am Jur 793, Fixtures, § 72.]

Hence, it is without dispute that Michigan, like other jurisdictions, recognizes the law of constructive annexation.

### 2. ADAPTATION TO THE USE OF THE REALTY

No Michigan case has addressed the adaptation prong of the fixture test. The Wisconsin Supreme Court aptly defined adaptation as "the relationship between the chattel and the use which is made of the realty to which the chattel is annexed." *Premonstratensian Fathers v Badger Mut Ins Co*, 46 Wis 2d 362, 369; 175 NW2d 237 (1970) (storage coolers adapted to retail grocery store). The treatise, 35 Am Jur 2d, Fixtures, § 12, p 708, further explained:

---

[6] See, e.g., *Los Angeles v Times-Mirror Co*, 219 Cal 198, 207; 25 P2d 826 (1933); *Dudley v Hurst*, 67 Md 44; 8 A 901 (1887); *Wolford v Baxter*, 33 Minn 12, 18; 21 NW 744 (1884).

[A]n object introduced onto the realty may become a fixture if it is a necessary or at least a useful adjunct to the realty, considering the purposes to which the latter is devoted.

We find these authorities informative and a useful guide in developing our jurisprudence in this area.

### 3. INTENTION TO MAKE PERMANENT ACCESSION TO THE REALTY

This Court examines the objective visible facts to determine whether intention to make the article a permanent accession to the realty exists. *Continental Cablevision v Roseville*, 430 Mich 727, 736; 425 NW2d 53 (1988).[7] The surrounding circumstances determine the intent of the party making the annexation, not the annexor's secret subjective intent. *Kent Storage Co, supra* at 165.[8] Intent may be inferred from the nature of the article affixed, the purpose for which it was affixed, and the manner of annexation. 35 Am Jur 2d, Fixtures, § 15, p 712; *American Telephone & Telegraph Co v Muller*, 299 F Supp 157, 159 (D SC, 1968);

---

[7] Accession "implies a transfer of ownership and control over the property attached." *Id.* at 737. This rationale is supported by a case decided by this Court one hundred years ago. In *Lansing Iron & Engine Works v Wilbur*, 111 Mich 413, 419; 69 NW 667 (1897), in holding that a boiler installed in a building was personal property and not a fixture, we explained that

"[t]here was nothing done by [the annexor] indicative of an intent to permit the machinery to be so annexed to the realty as to change its character. The state of the title to the realty, and the conduct of [the annexor] regarding the machinery, negatived any intent on his part to allow his interest in the machinery to be absorbed by the owners of the realty, or to permit it to be merged."

[8] See also 35 Am Jur 2d, Fixtures, § 6, pp 704-705; *United States v Five Parcels*, 765 F Supp 1283, 1285 (ED Mich, 1991); *American Telephone & Telegraph Co v Muller*, 299 F Supp 157, 159 (D SC, 1968); *State Hwy & Transportation Comm'r v Edwards Co, Inc*, 220 Va 90, 93-94; 255 SE2d 500 (1979) (objective test determines intent).

*State Hwy & Transportation Comm'r v Edwards Co,
Inc,* 220 Va 90, 93-94; 255 SE2d 500 (1979); *State Hwy
Comm v Empire Building Material Co,* 17 Or App
616, 625; 523 P2d 584 (1974).

C

Turning to the case now before us, we find that the
Court of Appeals correctly held that *Morris* and its
progeny is the proper test to determine what consti-
tutes a fixture for condemnation purposes. Although
the trial court did not specifically define what consti-
tutes a fixture, it is clear from defendants' motion for
election and the trial court's order granting that
motion that the trial court considered all defendants'
movable property to be fixtures pursuant to SJI2d
90.20.[9] Because SJI2d 90.20 permits a jury to con-

---

[9] Defendants' brief in support of their motion for election specifically
referenced SJI2d 90.21.

Further, the trial court's order granting defendant's motion stated:

It is hereby ordered that Defendants' Motion be, and the same
hereby is, granted. Plaintiff shall honor the election of Defendants
to be compensated for movable business property on a value-in-
place basis. Plaintiff is hereby required to purchase Defendants'
movable fixtures on a value-in-place basis.

As mentioned in n 2, defendants' movables included items such as a coat
tree, an electric clock, and a first-aid kit. These items could only be char-
acterized as a fixture pursuant to SJI2d 90.20: "The test is whether or not
it was the intent of the owner to permanently use the item in the opera-
tion of [his/her] business."

We further note that resolution of what constitutes a fixture is neces-
sary to properly address the election issue. See *Prudential Ins Co of
America v Cusick,* 369 Mich 269, 290; 120 NW2d 1 (1963) (holding that
issues can be raised for the first time on appeal if its consideration "is
necessary to a proper determination of a case"); MCR 7.316(A)(3) ("The
Supreme Court may, at any time, in addition to its general pow-
ers . . . permit the reasons or grounds of appeal to be amended or new
grounds to be added").

clude that almost any piece of property is a fixture,[10] which is contrary to the test enumerated in *Morris* and its progeny, we instruct trial courts to no longer use SJI2d 90.20.[11] The trial court failed to apply the proper test. Accordingly, we affirm the decision of the Court of Appeals, which remanded the case to the trial court to determine which of defendants' "movable business property" constitutes a fixture on the basis of *Morris*.

II

A

We next address whether the trial court and the Court of Appeals erred in holding that defendants could elect to receive either the value-in-place or the detach/reattachment cost of their fixtures.

The law of eminent domain is governed in Michigan by the constitution and by statute. Const 1963, art 10, § 2 obligates the condemnor of private property to render just compensation to the property owner:

> Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.

The UCPA "provides standards for the acquisition of property by an agency, the conduct of condemnation

---

[10] SJI2d 90.20 provides, in part, that "[f]ixtures may include small machinery, even hand tools," and that "[t]he test [used to determine what is a fixture] is whether or not it was the intent of the owner to permanently use the item in the operation of [his/her] business." SJI2d 90.20 is quoted in full in n 4.

[11] We also expressly overrule *State Hwy Comm'r v Miller*, 5 Mich App 591; 147 NW2d 424 (1967), and *Algonac v Robbins*, 69 Mich App 409; 245 NW2d 68 (1976), which stand for the same proposition as SJI2d 90.20.

actions, and the determination of just compensation."
MCL 213.52(1); MSA 8.265(2)(1). Although § 5 of the
UCPA mandates the condemning agency to make the
property owner a good-faith offer of just compensa-
tion, see MCL 213.55(1); MSA 8.265(5)(1), the UCPA
does not specifically define what constitutes just
compensation.

This Court has stated that just compensation is
given if the injured party is put in as good a position
as he would have been if the injury had not occurred.
*In re Widening of Bagley Ave*, 248 Mich 1, 5; 226 NW
688 (1929). "Just compensation should neither enrich
the individual at the expense of the public nor the
public at the expense of the individual." *In re State
Hwy Comm'r*, 249 Mich 530, 535; 229 NW 500 (1930).

The UCPA defines "property" as "land, buildings,
structures, tenements, hereditaments, easements, tan-
gible and intangible property, and property rights
whether real, personal, or mixed, including fluid min-
eral and gas rights." MCL 213.51(h); MSA 8.265(1)(h).
Because fixtures enhance the value of the realty
taken, the condemnor must include their value when
valuing the realty.  *Gratiot Ave, supra* at 573; *In re
Civic Center*, 335 Mich 528, 534; 56 NW2d 375 (1953);
*Kent Storage Co, supra* at 164-165 (whatever is
affixed to realty becomes a part of the realty).[12] How-
ever, if the owner of the land removes a fixture, the

---

[12] As the Oregon Supreme Court concisely stated:

Where land is condemned for public uses, the value of buildings
or other permanent improvements and fixtures on the land must be
considered in determining the owner's compensation to the extent
that they enhance the value of the land to which they are affixed,
the appropriator being required either to take the land with
improvements he finds thereon, or to reject them in toto. No allow-
ance can be made for personal property as distinguished from fix-

value of the realty must be decreased by the value of the fixture removed. *Gratiot Ave, supra* at 573. But, the award of just compensation must include the cost of detaching and reattaching the fixture because the value of the fixture as severed will be decreased. *Id.* Thus, the proper measure of damages would be the value of the land as enhanced by the fixtures, less the value of the fixtures in view of the necessity of severing them, plus the cost of detaching and reattaching the fixtures.

With regard to personal property (chattel), the condemnee is entitled to moving expenses. MCL 213.352(1); MSA 8.214(2)(1). The condemnee does not have a right of election in regard to personal property. " '[P]ersonal property' does not include a fixture, whether removable or not." MCL 213.352(2); MSA 8.214(2)(2). The maximum payment to an individual or family cannot exceed $1,000; the maximum payment to a business cannot exceed $15,000. MCL 213.352(1)(a); MSA 8.214(2)(1)(a). However, these payment restrictions do not prohibit payments in accordance with applicable regulations for federal reimbursement. MCL 213.353; MSA 8.214(3). But, "[i]n no event shall more than 1 payment be made to the same occupant for the same occupancy." *Id.*

B

Turning to the case now before us, the trial court and the Court of Appeals correctly concluded that defendants could receive either the value-in-place or the detach/reattachment cost for their fixtures. How-

---

tures affixed to the condemned realty. [*State Hwy Comm v Superbilt Mfg Co*, 204 Or 393, 412-413; 281 P2d 707 (1955).]

ever, it is misleading to say that a condemnee elects to receive the value-in-place in lieu of the detach/reattachment costs. As discussed, fixtures become part of the realty taken for condemnation purposes. Their fair-market value is computed in the determination of just compensation for the condemned realty. Thus, a condemnee automatically receives value-in-place for his fixtures. If the condemnee chooses to take his fixtures with him, however, he receives the detach/reattachment costs (the just compensation for the realty is simultaneously decreased by the fair-market value of the fixtures). Accordingly, the election, if one is made, is an election to receive the detach/reattachment costs. Therefore, if a condemnee wishes to receive the value-in-place for his fixtures, he does not have to file a motion for election, as did defendants in this case.[13]

The trial court, in holding that defendants were entitled to an election, relied on SJI2d 90.21.[14] We note that SJI2d 90.21 is erroneous to the extent that it permits a condemnee to receive value-in-place for all "equipment, machinery and personal property." As stated in this opinion, a condemnee is only entitled to value-in-place for fixtures, as defined by *Morris* and its progeny. For all other property, the condemnee is

---

[13] At oral argument, defendant asserted that it is unfair that condemnees must wait until trial on the just compensation issue to receive the value-in-place for the fixtures the condemning agency erroneously labeled as personal property. We acknowledge this inconvenience. However, we note that the condemnee is not without recourse because the condemning agency will ultimately be forced to pay the additional compensation, plus interest, and attorney fees up to one-third of the difference between its good-faith offer and the jury's determination of just compensation. MCL 213.65; MSA 8.265(15) (interest on judgment); MCL 213.66(3); MSA 8.265(16)(3) (attorney fees).

[14] SJI2d 90.21 is quoted in n 5.

only entitled to moving costs. Accordingly, we instruct trial courts to no longer use SJI2d 90.21 as it is currently drafted.

III

We reaffirm the three-part test enumerated in *Morris* and its progeny for determining what constitutes a fixture. We further hold that a condemnee has the right to elect to receive the detach/reattachment costs of his fixtures, rather than the value-in-place he automatically is entitled to. Accordingly, we affirm the decision of the Court of Appeals.

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, and KELLY, JJ., concurred with RILEY, J.