*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICOLE VEDRODE,

        Plaintiff-Appellant,

v

MUTEE H. ABDOLE,

        Defendant-Appellee.

UNPUBLISHED
July 22, 2021

No. 353542
Saginaw Circuit Court
LC No. 19-038844-CZ

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's judgment in defendant's favor following a bench trial on plaintiff's claims for statutory conversion and violation of the anti-lockout statute. This dispute arises out of the tax foreclosure on plaintiff's property and defendant's subsequent purchase of that property at auction. The propriety of the tax foreclosure is not at issue here, rather, the dispute revolves around whether the mobile home on the property was a fixture on the property such that it passed to defendant with the purchase of the real property or whether it instead remained plaintiff's personal property. Plaintiff contends that resolution of this issue is controlled solely by provisions of the Mobile Home Commission Act (MHCA), MCL 125.2301 *et seq*. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On January 13, 2012, plaintiff purchased the subject real property from the Village of Merrill for $7,000. Plaintiff indicated that there was no house on the property when she bought it. She purchased a mobile home from an acquaintance for $30,000 and paid cash. Plaintiff received a title and bill of sale when she purchased the mobile home on December 5, 2011. However, plaintiff testified that she never recorded this title with the Secretary of State.

Within approximately three months of buying the land, plaintiff had the mobile home moved to the property and installed on top of a basement. Plaintiff paid $4,000 to have the home moved to the property and for siding to be installed. The construction of the basement was a separate, additional expense. There is a short wall of cinder blocks at the base of the home, between the home and the basement. All of the items that make a mobile home "mobile" were

-1-

removed. Plaintiff also paid to have gas, electric, and city water and sewer connected to the home. After the mobile home was installed, plaintiff moved into the home and lived there with her daughter. Approximately two years later, plaintiff had a two-car garage and a porch constructed, both of which were attached to the mobile home. According to plaintiff, the garage has a cement floor and is "pole-barn style." Plaintiff testified that she "purposely" had the garage and porch constructed without a foundation so that she would have the option of moving them in the future. She paid $15,000 to build the garage and approximately $7,000 to $8,000 to build the porch. Plaintiff testified that she never filed an affidavit of affixture for the mobile home because she owned it "outright" and wanted to keep it as personal property.

On September 6, 2018, plaintiff's parcel of real property was sold at auction after having been foreclosed on for unpaid property taxes. According to plaintiff, the taxable value of the property was $98,000, which included the mobile home. Plaintiff explained that she fell behind in paying her taxes because she had used all of her money to put the home on the property and was "struggling" as a single parent. At trial in the instant case, plaintiff did not dispute the tax foreclosure with respect to her land, but she believed that she still owned the mobile home as personal property. Her understanding before the tax foreclosure auction was that "the foreclosure was only for the land[,] not the home" because she had "a title" to the home that made it personal property rather than real property.

Martin Spaulding conducted the tax foreclosure auction. He is the founder, general manager, and director of policy of Title Check, which manages the process of tax foreclosures for various Michigan counties. Spaulding read the following portion of the sale book[1] that was distributed on the date of the sale to auction attendees into the record:

> Mobile homes may be titled separately and considered personal property. It's the buyer's responsibility to determine the legal status of any mobile home located on a purchased property. A useful first step could include determining whether an Affidavit of -- Affidavit of Affixture of Manufactured Home has been executed and recorded, as outlined in Michigan Compiled Laws 125, Subsection 2330[i].

Spaulding testified, "We make an overt disclosure at the sale, loud and clear, with a visual; the title to mobile, manufactured and modular homes is not warranted." Additionally, Spaulding explained that he understood an affidavit of affixture to be "a filing with the Secretary of State that essentially abandons the title to the property as personal property, and affixes it as, in the future, from -- forward of the filing date, as a permanent portion of the real property for purposes of assessment." He also indicated that he did not have any knowledge whether there was an affidavit of affixture for the mobile home at issue in this case. The quitclaim deed conveying the subject property following the tax foreclosure sale did not specifically mention the mobile home.

Defendant testified that he purchased the subject property at the September 6, 2018 tax foreclosure auction. He did not have an affidavit of affixture for the mobile home or any documentation of separate ownership of the mobile home. He only had the deed for the real

---

[1] This book was admitted as an exhibit at trial.

property. Before the auction, defendant did a "general inspection" of the property but could not go inside the home. Defendant testified, "I observed a manufactured ranch, as it was advertised in the auction booklet, with garage and footings, with attached electric connections and water connections, and porch." He participated in the tax foreclosure auction remotely through the internet and was not physically present at the auction. At some point after the auction, he conveyed ownership of the land to Tayral, LLC, which was a company owned by defendant's wife and managed by defendant.

Plaintiff did not attend the tax foreclosure auction, and she subsequently learned that defendant bought the property at auction. Defendant went to the property and told plaintiff that she would have to leave. Plaintiff testified as follows:

> *A*. I said, this is my home; I own this home. You only bought the land, you did not buy my home.

> * * *

> *A*. I said, you should have learned that before you bought the property in the auction. But -- my home doesn't go with the sale.

Plaintiff testified that defendant did not agree and that during the course of the discussion, plaintiff offered to sell the home for $70,000 and defendant counter-offered to buy the home for $10,000. The parties were unable to reach an agreement. Defendant testified that plaintiff had told him that she "need[ed] 70,000 for [her] mobile home" and that he told her that he would be willing to give her "10,000 for keys." Defendant explained that he wanted to avoid receiving damaged property.

Defendant sought to evict plaintiff through summary proceedings, and plaintiff appeared at the hearing to oppose the eviction. A consent judgment was entered, granting defendant[2] the right to recover possession of the property but further indicating that the judgment did not decide ownership of the mobile home or any other structures on the property. Plaintiff explained that she had requested that this language be added to the judgment because "although he was evicting me off the property, I didn't -- that didn't mean he was getting my home. I still owned the home, and it was still mine; and I wanted to make that clear. When I agreed to this, to this eviction, I left the property; but the home was still my property." The consent judgment was entered on December 4, 2018, and it required plaintiff to vacate the property by January 4, 2019.

Plaintiff did not leave the property by January 4, and she was evicted on February 26, 2019 pursuant to an order of eviction entered by the district court. After she was evicted, plaintiff moved to live with her mother and tried unsuccessfully to sell the mobile home. The mobile home was never removed from the property. Plaintiff put for-sale signs on the mobile home and listed it for sale on Facebook Marketplace. Plaintiff testified that defendant continuously took her for-sale signs down, and she would put them back up. She had also been trying to sell the mobile home

---

[2] Defendant was the plaintiff in the eviction proceedings.

by listing it on the internet while she was still living in the home. Plaintiff explained that her plan was to sell the home and have somebody else move it off the property.

At some point approximately a week or two after the eviction, plaintiff noticed that the locks had been changed and she could not get into the mobile home. Plaintiff was never given a key to the new locks. In March 2019, plaintiff saw a car and moving boxes in the garage that did not belong to her. She also observed during this same time period that carpeting had been torn out, that work was being done in the kitchen and that the inside of the mobile home was being painted. Plaintiff maintained that all of these actions were taken without her permission or authorization. Plaintiff had the electrical and gas service shut off at some point.

Defendant testified that at some point in March 2019, after the eviction, he changed the locks on the mobile home and transferred the utilities to his name. He did not give plaintiff a key. Defendant indicated that the home needed repair. He never went to court after the eviction to get any clarification on who owned the mobile home.

Plaintiff initiated this action on March 8, 2019. Plaintiff alleged that although the land had been transferred to defendant as a result of the tax foreclosure, she still owned the mobile home as a result of a title held separately from the real property and the foreclosure did not apply to the mobile home. Plaintiff asserted a statutory conversion claim under MCL 600.2919a and a claim for violation of the anti-lockout statute, MCL 600.2918.

The matter proceeded to a bench trial, where the above summarized evidence was admitted. Plaintiff maintained that a mobile home is only treated as part of the real property if the procedures in MCL 125.2330i have been followed, meaning that the mobile home has been affixed to real property in which the mobile home owner also has an ownership interest *and* the owner has filed an affidavit of affixture with the department. Plaintiff argued that this statutory provision abrogated the common law with respect to when a mobile home becomes a fixture to real property. Accordingly, plaintiff claimed (1) that she still owned the mobile home because she had not filed an affidavit of affixture and thus had not satisfied the statutory criteria for affixing the mobile home to the real property, (2) that defendant had converted the mobile home, and (3) that defendant had violated the anti-lockout statute by changing the locks on the mobile home and thereby forcibly and unlawfully keeping plaintiff out of the mobile home.

Defendant argued that the mobile home had been affixed to the real property and transferred to defendant as part of the real property through the tax foreclosure sale. Defendant contended that once the mobile home became permanently affixed to the real property, the title merged with that of the underlying real estate. Additionally, defendant argued that the affidavit of affixture was not statutorily *mandated* and that a mobile home may still be treated as a fixture to real estate even if the owner failed to file the affidavit of affixture so long as the objective visible facts demonstrate that the mobile home was affixed to the real property. Defendant further argued that the eviction was carried out pursuant to a court order and that he did not unlawfully convert the mobile home or violate the anti-lockout statute.

The trial court issued a written opinion and order granting judgment in favor of defendant. The trial court relied on this Court's opinion in *Hix v Hix*, unpublished per curiam opinion of the Court of Appeals, issued March 6, 2007 (Docket No. 265104), to conclude that the affidavit of

affixture was not mandated by statute and that a mobile home may still be considered a fixture in the absence of a filed affidavit of affixture. The trial court further determined that the mobile home in this case was affixed to the real property both as that term is defined in the MHCA and under the common law test for fixtures.

In support of this determination, the trial court found that (1) the wheels, towing hitches, and running gear of the mobile home were removed; (2) the mobile home was attached to a foundation or other support system set over a basement with a cinderblock exterior base; (3) a garage was added and attached to both the house and the ground; (4) a porch was added that was attached to the ground and the house and that shared a continuous roof with the house; (5) the home was connected to utilities; (6) plaintiff lived in the home as her residence; and (7) the home was taxed as part of the real property and plaintiff never objected to this assessment. The trial court found that the objective facts demonstrated plaintiff's intent to make the mobile home a permanent accession to the realty.

The trial court concluded that because the mobile home was a fixture on the real property rather than personal property, plaintiff failed to show that defendant converted the mobile home. The trial court also concluded that plaintiff did not demonstrate a violation of the anti-lockout statute because the mobile home was a fixture on the real property and plaintiff therefore had no possessory interest at the time in issue. Plaintiff now appeals.

## II. STANDARD OF REVIEW

On appellate review following a bench trial, this Court reviews the trial court's conclusions of law de novo and its findings of fact for clear error, while giving deference to the trial court's superior ability to judge the credibility of the witnesses appearing before it. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

The questions raised on appeal, specifically relative to whether MCL 125.2330i requires an affidavit of affixture to be filed and whether this is the sole means by which a mobile home may become a fixture to real property, also present issues of statutory interpretation that this Court reviews de novo. *Id*. at 643.

## III. ANALYSIS

Plaintiff first argues that the trial court erred by determining that the mobile home was a fixture on the real property rather than personal property. As plaintiff admitted during her trial testimony, she does not dispute that the tax foreclosure sale extinguished her right in the land on which her mobile home was placed. Plaintiff instead contends that the mobile home remained personal property and that her ownership of the mobile home was therefore not affected by the tax foreclosure.

"[T]he term 'fixture' necessarily implies something having a possible existence apart from realty, but which may, by annexation, be assimilated into realty." *Wayne Co v William G Britton & Virginia M Britton Trust*, 454 Mich 608, 614-615; 563 NW2d 674 (1997) (quotation marks and

citation omitted; alteration in original). Whether the mobile home was properly considered a fixture is crucial to the resolution of this appeal—in which plaintiff claims that she retained title to the mobile home—because "under Michigan's tax statutes, a fixture becomes part of the real property and that title to the fixture as well as the land passes to a tax sale purchaser by virtue of his tax deed from the state." *Ottaco, Inc v Gauze*, 226 Mich App 646, 650-651; 574 NW2d 393 (1997).

The parties have not disputed that plaintiff's home was considered a mobile home. Under the MHCA, a mobile home is defined to mean "a structure that is transportable in 1 or more sections, built on a chassis, and designed to be used as a dwelling, with or without a permanent foundation, when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained in the structure." MCL 125.2302(h). As plaintiff notes, the MHCA generally requires that mobile homes in Michigan "be subject to the certificate of title provisions of [the MHCA]" and that mobile homes "shall not be sold or transferred except by transfer of the certificate of title for the mobile home pursuant to this act." MCL 125.2330(1) and (3).[3]

However, the MHCA also includes a process for explicitly making the mobile home part of the real property such that the mobile home may be conveyed as part of the real property and the certificate of title provisions in MCL 125.2330 no longer apply. See MCL 125.2330i(5). Specifically, MCL 125.2330i provides in relevant part as follows:

(1) If a mobile home is affixed to real property in which the owner of the mobile home has the ownership interest, the owner may deliver all of the following to the department:[4]

(a) An affidavit of affixture on a form provided by the department that contains all of the following:

(*i*) The name and address of the owner.

(*ii*) A description of the mobile home that includes the name of the manufacturer of the mobile home, the year of manufacture, the model, the

---

[3] These provisions provide in full as follows:

(1) After December 31, 1978, every mobile home located in this state shall be subject to the certificate of title provisions of this act, except for any new mobile home owned by a manufacturer or licensed mobile home dealer and held for sale.

* * *

(3) After December 31, 1978, a mobile home shall not be sold or transferred except by transfer of the certificate of title for the mobile home pursuant to this act.

[4] For purposes of MCL 125.2330i, "department" is defined to mean "the department of state." MCL 125.2302(d)(*i*)(C).

-6-

manufacturer's serial number and, if applicable, the number assigned by the department.

(*iii*) A statement that the mobile home is affixed to the real property.

(*iv*) The legal description of the real property to which the mobile home is affixed.

(*v*) The name of each holder of a security interest in the mobile home, together with the written consent of each holder to the termination of the security interest and the cancellation of the certificate of title under subsection (2), if applicable.

(b) The certificate of title for the mobile home, the manufacturer's certificate of origin if a certificate of title has not been issued by the department, or sufficient proof of ownership as provided in section 30a or 30e.

(c) A fee in an amount prescribed in section 30a for a certificate of title.

(2) When the department receives an affidavit and certificate of title under subsection (1), the department shall cancel the certificate of title for the mobile home. The department shall not issue a certificate of title for a mobile home described in subsection (1) except as provided in subsection (8).

(3) The owner of the mobile home shall deliver a duplicate original of the executed affidavit under subsection (1) to the register of deeds for the county in which the real property is located. The register of deeds shall record the affidavit.

(4) The department shall maintain the affidavit under subsection (1) for a period of 10 years from the date of filing.

(5) When the department receives an affidavit under subsection (1), the mobile home is considered to be part of the real property, sections 30 to 30h do not apply to that mobile home, any security interest in the mobile home is terminated, a lienholder shall perfect and enforce a new security interest or lien on the mobile home only in the manner provided by law for perfecting and enforcing a lien on real property, and the owner may convey the mobile home only as part of the real property to which it is affixed.

\* \* \*

(11) As used in this section:

(a) A mobile home is "affixed" to real property if it meets all of the following:

(*i*) The wheels, towing hitches, and running gear are removed.

(*ii*) It is attached to a foundation or other support system.

Plaintiff argues on appeal, as she did in the trial court, that this process is mandatory and that her failure to file an affidavit of affixture prohibited, as a matter of law, the mobile home from becoming a fixture. Plaintiff focuses on the failure to file an affidavit of affixture to demonstrate that the statutory requirements were not met.

Notably, the evidence supports the conclusion that the mobile home was "affixed" to the real property as that term is defined in the statute such that plaintiff could have filed an affidavit of affixture: the evidence showed that plaintiff owned both the mobile home and the underlying real property at the time that she had the mobile home moved to the property, all of the items that made the home "mobile" (such as wheels, towing hitches, and running gear) were removed, and the mobile home was attached to a basement foundation. MCL 125.2330i(1) and (11)(a). The parties do not dispute that plaintiff did not take the additional step of filing an affidavit of affixture, and there is no evidence that she filed an affidavit of affixture. Instead, the parties disagree over the legal effect of this failure.

Contrary to plaintiff's argument, the failure to follow the procedure in MCL 125.2330i for making a mobile home a fixture to real property does not compel the conclusion that the mobile home is not a fixture. This Court has held in a published decision that MCL 125.2330i(1) through (5) "created an *optional* procedure by which the owner of a mobile home affixed to real property could cancel the certificate of title and have the mobile home treated as part of the real property." *Mtg Electronic Registration Sys, Inc v Pickrell*, 271 Mich App 119, 125; 721 NW2d 276 (2006) (emphasis added).[5]

Moreover, the plain language of the statute does not support plaintiff's contention. Plaintiff argues that 125.2330i(5) means "that a mobile home is 'considered to be part of the real property' *only upon the successful execution of the various required steps outlined in Section 30i(1) of MHCA*" and that "[u]ntil then, the manufactured home remains personal property with the green 'certificate of title.' " Accordingly, plaintiff argues, a mobile home may only be sold or transferred by transferring the certificate of title as stated in MCL 125.2330i(3) unless all of the required steps in MCL 125.2330i(1) have been completed.

However, although the statutory language is clear that a mobile home becomes a fixture "[w]hen the department receives an affidavit under subsection (1)," the statute does *not* say that a mobile home may be treated as a fixture "*only* when" that procedure is followed. See MCL 125.2330i(5). The interpretation of a statute begins with the "specific language of the statute," with the goal of ascertaining the Legislature's intent from that language. *Ambs*, 255 Mich App at 643. Furthermore, "[a] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Mtg Electronic*, 271 Mich App at 128-129 (quotation marks and citation omitted).

---

[5] Although, "the MHCA provides the sole method of perfecting a security interest in a mobile home," *Mtg Electronic*, 271 Mich App at 120, the perfection of security interests is not at issue in this appeal.

Plaintiff's proposed reading of MCL 125.2330i(5) would require this Court to improperly read additional language into the statute to conclude that the statutory procedure was the only manner in which a mobile home could ever be treated as a fixture. *Id.* MCL 125.2330i is clear and unambiguous in that it does not prohibit a mobile home from being considered a fixture merely because of a failure to follow the procedures in MCL 125.2330i(1) through (5), such as failing to file an affidavit of affixture. "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Walters v Leech*, 279 Mich App 707, 709; 761 NW2d 143 (2008) (quotation marks and citation omitted).

Applying MCL 125.2330i as written, there is no prohibition in the statute against treating the mobile home as a fixture under the common law. The common law fixture test is well established:

> We reaffirm the three-part test enumerated in *Morris v Alexander*, 208 Mich 387; 175 NW 264 (1919), for determining what constitutes a fixture. Property is a fixture if (1) it is annexed to the realty, whether the annexation is actual or constructive; (2) its adaptation or application to the realty being used is appropriate; and (3) there is an intention to make the property a permanent accession to the realty. [*Wayne Co*, 454 Mich at 610.]

Furthermore, the "focus is on the intention of the annexor as manifested by the objective, visible facts, rather than the annexor's subjective intent." *Ottaco*, 226 Mich App at 651. " 'Intent may be inferred from the nature of the article affixed, the purpose for which it was affixed, and the manner of annexation.' " *Id.*, quoting *Wayne Co*, 454 Mich at 619.

As an initial matter, plaintiff argues that the common law of fixtures was abrogated with respect to mobile homes by the MHCA, specifically the affidavit of affixture provisions of the statutory scheme. MCL 125.2330i was added in 2003. 2003 PA 44. However, "[i]n construing the language of a statute, courts must . . . keep in mind that the Legislature is deemed to act with an understanding of common law in existence before the legislation was enacted." *Walters*, 279 Mich App at 710 (quotation marks and citation omitted). The common law "remains in force until amended or repealed," and "legislative amendment of the common law is not lightly presumed." *Id.* (quotation marks and citation omitted). "Whether a statutory scheme preempts, changes, or amends the common law is a question of legislative intent . . . ." *Id.* (quotation marks and citation omitted; ellipsis in original).

Here, as previously discussed, the procedure in MCL 125.2330i is optional and the statute does not provide that failure to comply with these procedures prevents a mobile home from being treated as a fixture to real property. Thus, there is no conflict between the statute and the common law test for fixtures, and the statutory language does not evidence an intent by the Legislature to abrogate the common law of fixtures with respect to mobile homes. "[I]t is well established that statutes in derogation of the common law must be strictly construed, and will not be extended by implication to abrogate established rules of common law." *Ambs*, 255 Mich App at 649 (quotation marks and citation omitted).

Turning to the question whether the mobile home in this case constituted a fixture under the common law, there was uncontradicted trial evidence showing that plaintiff had the mobile home moved to the property after she bought the land and that the mobile home was installed on top of a basement with a short wall of cinder blocks at the base. Any items that would make the home "mobile" were removed, and plaintiff paid to have gas, electric, water, and sewer utilities connected to the home. Plaintiff also had a two-car garage and porch constructed and attached to the home.

These facts clearly demonstrate that the mobile home was annexed to the real property by being attached to the basement. *Wayne Co*, 454 Mich at 610. As our Supreme Court explained in *Wayne Co*, 454 Mich at 615:

> Annexation refers to
>
> the act of attaching or affixing personal property to real property and, as a general proposition, an object will not acquire the status of a fixture unless it is in some manner or means, albeit slight, attached or affixed, either actually or constructively, to the realty. That is, if the object is not attached to the land or to some structure or appliance which is attached to it, it will retain its character as personalty even though intended for permanent use on the premises. [Quotation marks and citation omitted.]

Additionally, plaintiff lived with her daughter in the home as their residence, and the photographic evidence introduced at trial depicted that plaintiff's home was surrounded by other houses in relatively close proximity. Our Supreme Court held in *Wayne Co*, 454 Mich at 618 that adaptation in the context of the second prong of the fixture test is appropriately defined as "the relationship between the chattel and the use which is made of the realty to which the chattel is annexed." (Quotation marks and citation omitted.) "[A]n object introduced onto the realty may become a fixture if it is a necessary or at least a useful adjunct to the realty, considering the purposes to which the latter is devoted." *Id*. at 619 (quotation marks and citation omitted; alteration in original). A home serving as a residence in a residential neighborhood with other houses is a highly useful addition to the real property on which the home sits, and the evidence in this case therefore demonstrated an appropriate adaptation of the mobile home to the real property. *Id*. at 610, 618-619.

Finally, with respect to the third prong of the test, "[t]his Court examines the objective visible facts to determine whether intention to make the article a permanent accession to the realty exists." *Id*. at 619. Accession "implies a transfer of ownership and control over the property attached" and concerns whether there is evidence of an intent by the annexor to allow the annexation to change the character of the personal property or permit the interest in the personal property to be "absorbed" or "merged" with that of the real property. *Id*. at 619 n 7 (quotation marks and citations omitted). Considering the objective facts in this case, including that the mobile home served as plaintiff's residence, was installed on the land with a basement underneath it, and was connected to utilities that included city water and sewer, gas, and electric, all of which aided in the home's function as a residence, the evidence supports the conclusion that plaintiff's

objective intent was to make the mobile home a permanent accession to the real property. *Id*. at 610, 619 & n 7; *Ottaco*, 226 Mich App at 651.

Despite plaintiff's testimony that her subjective intent was to maintain the mobile home as personal property by refraining from filing an affidavit of affixture and ensuring that she could move all parts of the structure at some point in the future if she chose to do so, it is the objective facts rather than the owner's subjective intent that governs the analysis. *Ottaco*, 226 Mich App at 651. *Wayne Co*, 454 Mich at 619 ("The surrounding circumstances determine the intent of the party making the annexation, not the annexor's secret subjective intent."). Here, "the objective, visible facts," *Ottaco*, 226 Mich App at 651, depict a home that was intended to be permanently affixed to the land, and her secret subjective intent for failing to file an affidavit of affixture cannot serve to defeat the intent that was evident from the objective and visible facts. *Id*.; *Wayne Co*, 454 Mich at 619. Moreover, a mobile home may still be a fixture even if it is possible to remove it from the real property in the future. See *Ottaco*, 226 Mich App at 652 ("Notwithstanding the fact that the home could be eventually moved from its foundation to another location, the objective facts manifest the Gauzes' intent to make the mobile home a permanent accession to the realty.").

Accordingly, the trial court did not err by finding that the mobile home in this case was a fixture. As a fixture, the mobile home became part of the real property, *Wayne Co*, 454 Mich at 614-615, and title to the mobile home passed to defendant through the quitclaim deed, *Ottaco*, 226 Mich App at 652 ("Accordingly, because the mobile home became a fixture, title to both the mobile home and the real estate passed to Ottaco upon issuance of the tax deed.").

This conclusion is supported by this Court's decision in *Ottaco*, in which this Court held in relevant part as follows:

> On the basis of the undisputed facts presented below, we conclude that the trial court correctly determined that the mobile home in question became part of the real property. The Gauzes had ownership interests in both the mobile home and the land on which it is located. The mobile home was annexed by way of a concrete slab foundation. It has all the attributes of a conventional, permanent dwelling, including a porch, as well as connections to gas, electric, sewer, and water lines. In every respect, the mobile home was integrated with and adapted to the use of the real property, which property was zoned for single-family residential use. Notwithstanding the fact that the home could be eventually moved from its foundation to another location, the objective facts manifest the Gauzes' intent to make the mobile home a permanent accession to the realty. Accordingly, because the mobile home became a fixture, title to both the mobile home and the real estate passed to Ottaco upon issuance of the tax deed. [*Ottaco*, 226 Mich App at 651-652.]

Next, plaintiff argues that the trial court erred by granting judgment in defendant's favor on plaintiff's claims for statutory conversion and violation of the anti-lockout statute. However, plaintiff's arguments are premised on her primary argument that the mobile home was not a fixture. In light of the conclusion that the mobile home was a fixture, plaintiff has not shown that the trial court erred by finding that she did not prove either of her two claims.

First, as relevant to the statutory conversion claim in this case, plaintiff was required to prove that she was "damaged as a result of . . . [a]nother person's stealing or embezzling property or converting property to the other person's own use." MCL 600.2919a(1)(a). Our Supreme Court has held that MCL 600.2919a(1)(a) constitutes a "subset of common-law conversions in which the common-law conversion was to the other person's 'own use.'" *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 355; 871 NW2d 136 (2015). Common-law conversion, in turn, is defined "as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Id.* at 351-352 (quotation marks and citation omitted). Personal property does not include fixtures. *Wayne Co*, 454 Mich at 615.

In this case, because title of the mobile home transferred to defendant as a fixture to the real property defendant obtained through the tax foreclosure sale, plaintiff no longer held any ownership interest in the mobile home. *Ottaco*, 226 Mich App at 652. Furthermore, as a fixture, the mobile home was not considered personal property. *Wayne Co*, 454 Mich at 615. Hence, because plaintiff no longer held an ownership interest in the mobile home and because it was no longer personal property, plaintiff did not establish her statutory conversion claim against defendant. *Aroma Wines*, 497 Mich at 351-352, 355. Accordingly, plaintiff has not demonstrated that the trial court erred by granting judgment in defendant's favor on this claim.

Next, with respect to the alleged violation of the anti-lockout statute, plaintiff's complaint alleged that defendant violated MCL 600.2918(1) and (2),[6] which provide as follows:

> (1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, is entitled to recover 3 times the amount of his or her actual damages or $200.00, whichever is greater, in addition to recovering possession.

> (2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner is entitled to recover the amount of his or her actual damages or $200.00, whichever is greater, for each occurrence and, if possession has been lost, to recover possession. Subject to subsection (3), unlawful interference with a possessory interest includes 1 or more of the following:

> (a) Use of force or threat of force.

> (b) Removal, retention, or destruction of personal property of the possessor.

> (c) Changing, altering, or adding to the locks or other security devices on the property without immediately providing keys or other unlocking devices to the person in possession.

---

[6] Neither of these two subsections were altered in the recent amendment to this statute. See 2019 PA 41.

-12-

(d) Boarding of the premises that prevents or deters entry.

(e) Removal of doors, windows, or locks.

(f) Causing, by action or omission, the termination or interruption of a service procured by the tenant or that the landlord is under an existing duty to furnish, which service is so essential that its termination or interruption would constitute constructive eviction, including heat, running water, hot water, electric, or gas service.

(g) Introduction of noise, odor, or other nuisance.

According to plaintiff's complaint, her claim that defendant violated MCL 600.2918(1) and (2) was predicated on defendant's act of changing the locks and plaintiff's allegation that plaintiff did not have legal authority to evict her from the mobile home. However, another provision of this statute, contained in MCL 600.2918(3)(a),[7] provides that "[a]n owner's actions do not unlawfully interfere with a possessory interest if . . . [t]he owner acts pursuant to court order." As the trial court found, plaintiff was evicted from the property pursuant to an order of eviction issued by the district court. The order of eviction was admitted into evidence at trial, and it was predicated on plaintiff's failure to vacate the property by January 4, 2019 as required by the December 4, 2018 judgment of possession. Where the district court's orders related to the eviction have not been reversed or vacated, "they are conclusive on the narrow issue whether the eviction was proper." *Sewell v Clean Cut Mgmt, Inc*, 463 Mich 569, 576-577; 621 NW2d 222 (2001). Accordingly, the trial court did not err by finding in defendant's favor on plaintiff's claim for violation of the anti-lockout statute.

Affirmed. Defendant having prevailed is entitled to coasts. MCR 7.219.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

---

[7] This specific provision also was not affected by the recent amendment to MCL 600.2918. See 2019 PA 41.